[No. 59435-0.   En Banc.   April 1, 1993.]

ALLIED DAILY NEWSPAPERS OF WASHINGTON, ET AL,
*Respondents*, v. KENNETH O. EIKENBERRY, *as
Attorney General*, ET AL, *Appellants*.

206

*Christine O. Gregoire, Attorney General,* and *Lee Ann Miller* and *Daniel Radin, Assistants,* for appellants.

*Davis Wright Tremaine,* by *P. Cameron DeVore, Bruce E.H. Johnson,* and *Gregory J. Kopta,* for respondents Allied Daily Newspapers, et al.

*Norm Maleng, Prosecuting Attorney,* and *Virginia Kirk, Deputy,* for respondent King County.

*David Utevsky* and *Nancy L. Talner* on behalf of the American Civil Liberties Union of Washington Foundation and Shelton Publishing, Inc., amici curiae for respondents.

GUY, J. — This case presents a challenge raised by a number of press organizations to the constitutionality of section 9 of Substitute House Bill 2348 (the Act or SHB 2348), Laws of 1992, ch. 188, § 9. Section 9 requires courts to ensure that information identifying child victims of sexual assault is not disclosed to the public or press during the course of judicial proceedings or in any court records. We hold that section 9 is unconstitutional because it violates the right of open access to judicial proceedings, as guaranteed under article 1, section 10 of the Washington State Constitution.

I

The motivating force behind the Act's passage was an editorial policy of The Shelton-Mason County Journal (the Journal). In testimony before the Legislature, the Journal's managing editor, Charles Gay, explained that the Journal's policy is to cover all felony trials in the Mason County Superior Court by naming all witnesses and summarizing their stories. Mr. Gay further explained that this policy entails publishing the names and ages of the children, as well as detailed information regarding the alleged crimes, when reporting on sexual assault cases involving child victims. Mr. Gay stated that part of the purpose of the policy is to help make the public more aware of the problem of child abuse, and to reduce the social stigma of being a sexual victim.

After vetoing 3 of the bill's 10 sections, the Governor approved SHB 2348 on April 2, 1992. The bill had an effective date of June 11, 1992.

On May 27, 1992, Allied Daily Newspapers of Washington, Washington Newspaper Publishers Association, and Fisher Broadcasting Inc. (hereafter Allied) filed a complaint in King County Superior Court asking for a declaratory judgment that the Act is unconstitutional and requesting an injunction against its enforcement. Defendants were the Honorable Kenneth Eikenberry in his capacity as the State Attorney General, the Honorable Norm Maleng as King County Prosecutor, and the State of Washington. On June 10, 1992, the trial court ruled that section 9 of the Act is unconstitutional and entered a preliminary injunction against its enforcement. The trial court upheld the remaining sections of the Act to the extent they are not applied to traditionally open judicial proceedings and court documents. The trial court also realigned the King County Prosecutor as a party plaintiff because of his position that the Act is unconstitutional. On June 29, 1992, the trial court once again ruled that section 9 of the Act is unconstitutional and permanently enjoined the State and King County from enforcing it. The court again upheld the constitutionality of the remaining sections of the Act.

We accepted the State's request for direct review.

II

As passed by the Washington State Legislature, the Act consisted of 10 sections. At issue in this appeal is section 9, which provides:

Child victims of sexual assault who are under the age of eighteen, have a right not to have disclosed to the public or press at any court proceeding involved in the prosecution of the sexual assault, the child victim's name, address, location, photographs, and in cases in which the child victim is a relative or stepchild of the alleged perpetrator, identification of the relationship between the child and the alleged perpetrator. The court shall ensure that information identifying the child victim is not disclosed to the press or the public and that in the event of any improper disclosure the court shall make all necessary orders to restrict further dissemination of identifying informa-

tion improperly obtained. Court proceedings include but are not limited to pretrial hearings, trial, sentencing, and appellate proceedings. The court shall also order that any portion of any court records, transcripts, or recordings of court proceedings that contain information identifying the child victim shall be sealed and not open to public inspection unless those identifying portions are deleted from the documents or tapes.

Laws of 1992, ch. 188, § 9 (codified as RCW 10.52.100; amending RCW 10.52 (Witnesses — Generally)).

■ ■ Allied argues that section 9 of SHB 2348 violates the public's and the press's right of access to openly administered justice as guaranteed under article 1, section 10 of the Washington State Constitution and the first and fourteenth amendments to the United States Constitution. For the reasons below, we agree that section 9 of SHB 2348 violates article 1, section 10 of the Washington State Constitution. We need not, and therefore do not, reach the question whether it also violates the open justice requirement of the first and fourteenth amendments to the United States Constitution. *See Seattle v. Mesiani,* 110 Wn.2d 454, 456, 755 P.2d 775 (1988) (federal constitutional challenge not considered when sobriety checkpoint program declared illegal under state constitution); *State v. Coe,* 101 Wn.2d 364, 373-74, 679 P.2d 353 (1984) (when both state and federal constitutional challenges are raised, court first applies state constitution). Allied further argues that section 9 violates state and federal constitutional provisions regarding the separation of powers and rights of the public and the press to free speech and due process. Because we conclude section 9 violates Const. art. 1, § 10, it is unnecessary for us to consider Allied's other constitutional challenges.

III

Under Const. art. 1, § 10, "[j]ustice in all cases shall be administered openly, and without unnecessary delay." *Cf.* Const. art. 1, § 22 (amend. 10) (guaranteeing criminal defendant's right to public trial). This court has stated that this "separate, clear and specific provision entitles the public, and . . . the press is part of that public, to openly administered

justice." *Cohen v. Everett City Coun.*, 85 Wn.2d 385, 388, 535 P.2d 801 (1975). The application of the right of public access in a particular context may prohibit court closure. For example, in *Cohen* we held that the trial court erred in sealing the record of a city council meeting at which a license had been revoked. *Cohen*, at 390. The trial court had sealed the records because at the city council meeting the licensee had made "serious and grave" allegations against a named individual who was not present there. *Cohen*, at 388. We held such a reason inadequate to justify sealing the records.

We later elucidated the nature of the public's right to openly administered justice in *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980). The trial court had closed a pretrial suppression hearing in a murder prosecution. A newspaper challenged this closure. In upholding the closure, we explained that the public's right of access to open proceedings is not absolute, and that it may be outweighed by the necessity of ensuring a criminal defendant's right to a fair trial under Const. art. 1, § 22 (amend. 10). 94 Wn.2d at 60. *Accord, Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606, 73 L. Ed. 2d 248, 102 S. Ct. 2613 (1982) ("[a]lthough the right of access to criminal trials is of constitutional stature, it is not absolute"). We also announced guidelines for trial courts to follow when faced with the task of balancing the competing constitutional interests in suppression hearing closure questions. 94 Wn.2d at 62-63.

We amplified and interpreted those guidelines in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 36-39, 640 P.2d 716 (1982), where we held that the trial court had not complied with them when closing a pretrial hearing and sealing records. As reaffirmed in *Ishikawa*, the guidelines are:

1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose.

We adhere to the constitutional principle that it is the right of the people to access open courts where they may freely observe the administration of civil and criminal justice. Openness of courts is essential to the courts' ability to maintain public confidence in the fairness and honesty of the judicial branch of government as being the ultimate protector of liberty, property, and constitutional integrity. This right of access is not absolute, however, and may be outweighed by some competing interest as determined by the trial court on a case-by-case basis according to the *Ishikawa* guidelines.

In the present case, the competing interests are also compelling: to protect the child victim from further trauma and harm and to ensure the child's privacy as guaranteed under Const. art. 1, § 7. These interests on an individualized basis may be sufficient to warrant court closure. Section 9 of SHB 2348 does not permit such individualized determinations, is not in accordance with the *Ishikawa* guidelines, and is therefore unconstitutional.

The first *Ishikawa* guideline is that the proponent of closure or sealing must make some showing of the need for doing so. Such a showing is highly restricted under section 9. The proponent of closure need only show that it is the only way to ensure nondisclosure of identifying information. Once this is shown, section 9 requires the court to close regardless of whether doing so is necessary for the individual child. The child's age, psychological maturity and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives are irrelevant under section 9. *Accord, Globe Newspaper*, 457 U.S. at 607-08 (describing factors to be considered in making closure

decision). Instead, section 9 requires the trial court to assess not the individual child, but the probable manner in which the trial of the sexual assault will be conducted. Courtroom strategy, not protection of the child, is the litmus test for closure under section 9. In this way, a trial court might be forced to close its doors and to seal records when the child's psychological maturity, the nature of the crime, and the child's and the relatives' wishes regarding closure all warrant keeping the trial open. Section 9 thus prevents the trial court from complying with the first *Ishikawa* guideline.

Compliance with the remaining guidelines is also prevented. The second *Ishikawa* guideline is that anyone present when the closure motion is made must be given an opportunity to object to the closure. The scope of relevant objections under section 9 is so restricted as to be meaningless. No debate regarding the necessity of closure to protect the child's well-being has any relevance under section 9. Any objection raised must be directed at the preliminary question whether the trial can be conducted openly without disclosure.

Similarly, instead of seeking the least restrictive means to protect the child's welfare, as the third guideline requires, the court is directly pursuing only the goal of ensuring nondisclosure. Under such circumstances, the trial court cannot engage in any weighing of the individual child's interest against the public's interest in open access, as the fourth guideline requires. Likewise, whereas the fifth guideline requires any closure order issued must be no broader in its application or duration than necessary to serve its purpose, section 9 leaves the trial court no discretion as to the breadth of the closure order. The order must ensure no disclosure whatsoever, and section 9 allows for no time limit.

■ Section 9 does not allow trial courts to comply with the *Ishikawa* guidelines. Therefore section 9 violates the open access to justice requirement of Const. art. 1, § 10.

## IV

Section 10 of SHB 2348 provides that "[i]f any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected." Laws of 1992, ch. 188, § 10. The State argues that the first sentence of section 9 can be severed from the rest of the section and upheld. We disagree. The first sentence of section 9 provides that "[c]hild victims of sexual assault . . . have a right not to have [identifying information] disclosed to the public or press at any court proceeding involved in the prosecution of the sexual assault". This language permits no consideration of competing constitutional rights and, therefore, like the rest of section 9, violates Const. art. 1, § 10.

■■ Without citing any authority, the State also argues that section 9 can be upheld in its entirety as applied to juvenile offender proceedings, which the State maintains are open by statutory, not constitutional, right. We reject this argument. There is no indication that the Legislature ever intended section 9 to apply to juvenile offender proceedings. To the contrary, section 5 of the Act would have imposed on juvenile offender proceedings strictures similar to those of section 9, but section 5 was vetoed by the Governor. In exercising the veto power, the Governor performs a legislative function and therefore must be considered to be acting as part of the Legislature. *State ex rel. Stiner v. Yelle*, 174 Wash. 402, 408, 25 P.2d 91 (1933). Therefore, the Governor's rejection of section 5 must be interpreted as a legislative determination not to apply the Act's nondisclosure provisions to juvenile offender proceedings. Consequently, we assume the Legislature never intended section 9 to apply to such proceedings.

■ Finally, Allied raises in passing the assertion that sections 6, 7, and 8 of the Act also may be unconstitutional. The trial court struck down section 9 but upheld the remaining sections as constitutionally permissible to the extent

they are not applied to traditionally open judicial proceedings and court documents. The parties assigned no error to the portion of the trial court's decision regarding the sections of the Act other than section 9. A ruling of the trial court to which no error has been assigned is not subject to review. *State v. Hubbard*, 103 Wn.2d 570, 574, 693 P.2d 718 (1985). Therefore any issues pertaining to those sections are not properly before us and we will not address them.

## V

In conclusion, we recognize that closure of judicial proceedings or court documents may, under some circumstances, be necessary in order to protect child victims of sexual assault from further trauma and harm and to protect their rights of privacy. However, any closure of traditionally open judicial proceedings is permissible under Const. art. 1, § 10 only if closure is necessary according to the guidelines this court previously defined in *Kurtz* and *Ishikawa*. Because section 9 of SHB 2348 does not permit trial courts to conform to constitutional guidelines, we declare it unconstitutional.

The trial court is affirmed.

ANDERSEN, C.J., and UTTER, BRACHTENBACH, DURHAM, SMITH, and JOHNSON, JJ., concur.