[No. 39299-9-I.   Division One.   October 4, 1996.]

*In the Matter of the Detention of* D.A.H.

D.A.H., *Respondent,* v. SEATTLE TIMES COMPANY, *Petitioner.*

---

[27]*See State v. Ng,* 110 Wn.2d 32, 42-44, 750 P.2d 632 (1988); *Daly v. Lynch,* 24 Wn. App. 69, 74-75, 600 P.2d 592 (1979).

*Marshall J. Nelson, Jessica L. Goldman,* and *Davis Wright Tremaine,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Catherine Hendricks* and *Michele Hauptman, Deputies,* for respondent.

*Christine A. Jackson* and *Bernadette J. Foley* of *The Defender Association,* for D.A.H.

BAKER, C.J. — Under the sexually violent predator provisions of the Community Protection Act, RCW 71.09, once a person has been ordered detained for possible commitment for treatment, he or she is entitled to a probable cause hearing within 72 hours. The purpose of the hearing is to determine whether probable cause exists to believe that the person is a sexually violent predator. If the court determines that probable cause exists, the person is then transferred to an appropriate facility for evaluation, and a trial is held to decide, based upon proof beyond a reasonable doubt, whether the person should be committed to a secure treatment center for sexually violent predators.

D.A.H. was convicted of a sex offense, and incarcerated. The day before he completed serving his sentence, the State commenced a sexually violent predator proceeding.

The superior court ordered D.A.H. detained, and sealed the court file. The Seattle Times moved to intervene, and sought to have the file opened. D.A.H. moved to close the probable cause hearing. The superior court ordered that the file remain sealed, and that the probable cause hearing be closed based upon equal protection and privacy rights of D.A.H. The court also ordered that the public may be notified that the courtroom and court file are closed, and that the public will be notified of the outcome of the probable cause hearing. The Seattle Times and D.A.H. both sought discretionary review of the superior court's order, which we granted. We now affirm the superior court, and hold that probable cause proceedings under RCW 71.09 are presumptively closed.

Chapter 71.05 RCW sets forth the procedures for involuntary civil commitment of mentally ill individuals. These procedures are intended primarily to provide short-term treatment to individuals with serious mental disorders and then return them to the community. Because the Legislature found that a small but extremely dangerous group of sexually violent predators exists, who suffer from a "mental abnormality or personality disorder," not appropriate for the short-term treatment procedures contemplated by RCW 71.05, it created an alternative form of civil commitment in RCW 71.09, the sexually violent predator act.[1]

Equal Protection

Under both of these civil commitment chapters, a person may be committed for treatment based upon a determination that the person suffers either from a "mental abnormality" or a "mental disorder."[2] Many of the procedural rights of a person committed under RCW 71.09 are similar to those under RCW 71.05. Both provide that a probable cause hearing must be held within 72 hours of

---

[1]RCW 71.09.010.

[2]*Compare* RCW 71.09.020(2) *with* RCW 71.05.020(2).

detainment.[3] At both probable cause hearings, a person has the right to be represented by an attorney, to present evidence, to cross-examine witnesses, and to review all documents in the court file.[4] In both the court must also consider whether a less restrictive alternative treatment would be appropriate.[5] On the other hand, RCW 71.09 does not contain provisions similar to RCW 71.05 addressing the confidentiality of records, limited access to records, the limited grounds for releasing records, or the penalties for unauthorized release of records.[6]

Neither statute specifically addresses whether proceedings under the statute should be closed to the public. Pursuant to the directive of RCW 71.05.570, however, the supreme court promulgated the Mental Proceedings Rules (MPR). In particular, MPR 1.3 states that proceedings under RCW 71.05 shall be closed to the public unless the person subject to the proceedings makes a written request that the proceedings be open. No similar provision for promulgation of rules or closure exists in RCW 71.09.[7]

In analyzing RCW 71.09, we must look beyond its language and examine *Young*, the supreme court decision upholding its constitutionality.[8] The court noted that RCW 71.09 was a civil statute primarily concerned with incapacitation and treatment because it applied only to individuals with a mental disorder, it provided for the care and treatment of those individuals, and it required

---

[3]*Compare* RCW 71.09.040(2) *with* RCW 71.05.150(1)(c), 71.05.170.

[4]*Compare* RCW 71.09.040(3) *with* RCW 71.05.200(b) and (d), 71.05.250(1), (2), (5).

[5]*Compare* RCW 71.09.060(1) *with* RCW 71.05.240.

[6]*See* RCW 71.05.390 (confidential records); RCW 71.05.610, .620, .640, .650, .660, .670, .680 (limited access to treatment records); RCW 71.05.400, .420, .425, .427, .440 (limited grounds for release of information and penalties for unauthorized release of information).

[7]While MPR 1.3 does not specifically apply to RCW 71.09, we note that the supreme court ruled that, as in other civil commitment trials, the three peremptory challenges permitted by MPR 3.4(a) were also the appropriate number in a trial under RCW 71.09. *In re Young*, 122 Wn.2d 1, 49, 857 P.2d 989 (1993).

[8]*Young*, 122 Wn.2d at 49.

that they be released when they were no longer danger-ous.[9]

The *Young* court analyzed the procedural due process protections provided by the statute. In particular, the court examined the equal protection requirements of the article I, section 12 and the Fourteenth Amendment, which require that " 'persons similarly situated with respect to the legitimate purposes of the laws receive like treatment.' "[10] The court distinguished persons committed under RCW 71.09 because (1) they are more dangerous that other mentally ill persons and (2) their treatment is different from other mentally ill persons.[11] These distinctions relate, however, to the care and treatment provided under the statute.[12] Adopting the United States Supreme Court's reasoning, the court noted that:

> dangerousness of the detainee "may be a reasonable distinction for purposes of determining the type of *custodial or medical care* to be given, but it has *no relevance whatever* in the context of the opportunity to show whether a person is mentally ill *at all*."[13]

■ Following this reasoning, the court determined that for purposes of care and treatment, persons committed under RCW 71.09 are not similarly situated to persons committed under RCW 71.05.[14] For reasons other than care and treatment, however, persons committed under RCW 71.09 are similarly situated to those committed under RCW 71.05.[15] In particular, during the initial prob-

[9]*Young*, 122 Wn.2d at 20-21.

[10]*Young*, 122 Wn.2d at 44 (quoting *In re Knapp*, 102 Wn.2d 466, 473, 687 P.2d 1145 (1984)).

[11]*Young*, 122 Wn.2d at 45.

[12]*Young*, 122 Wn.2d at 45.

[13]*Young*, 122 Wn.2d at 45 (quoting, *Baxstrom v. Herold*, 383 U.S. 107, 111, 86 S. Ct. 760, 15 L. Ed. 2d 620 (1966)).

[14]*Young*, 122 Wn.2d at 51.

[15]*Young*, 122 Wn.2d at 45-46.

able cause determination, a party to a civil commitment proceeding under RCW 71.09 is similarly situated to a party to commitment proceedings under RCW 71.05.[16]

▮ Applying the *Young* equal protection analysis to this case, we hold that, for the duration of his probable cause hearing, D.A.H. is similarly situated to those appearing at probable cause hearings under RCW 71.05. As a result, equal protection requires that the same confidentiality and closure protections apply to both.

### Open Proceedings

The Times argues that article 1, section 10 and the First Amendment create a presumption that all proceedings, including civil commitment proceedings, are open to the public unless the trial court makes specific findings and conclusions supporting the need for closure. The Times maintains that the decision to close a court must be done on a case-by-case basis.

Washington Constitution article I, section 10 provides that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." The United States Supreme Court has also recognized that the press and the public have the right to open court proceedings.[17]

In applying this presumption of open courts, our supreme court has adopted a five-part test for courts to apply on a case-by-case basis in deciding whether criminal or civil proceedings should be closed.[18] The *Ishikawa* test has been summarized as:

1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than the accused's right to a fair trial, the

---

[16]*See Young*, 122 Wn.2d at 45-46 (requiring opportunity to appear at probable cause hearing).

[17]*See, e.g., Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980).

[18]*Ishikawa*, 97 Wn.2d at 37-39.

proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interests of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose.[19]

In addressing closure, the Supreme Court has held that a presumption of open court proceedings exists, which may be overcome when the court specifically finds that an overriding interest exists and closure is essential to preserve higher values.[20] The closure order must also be narrowly tailored to serve that interest.[21]

We do not interpret the Supreme Court decisions in *Ishikawa* and *Press-Enterprise* as establishing a presumption that all court hearings of any type are presumptively open. The Supreme Court has established the opposite presumption in civil commitment proceedings, presumably because the privacy interest of the individual is consistently high in such proceedings; and extraordinary cir-

---

[19]*Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993) (citing *Ishikawa*, 97 Wn.2d at 37-39). The *Ishikawa* factors have been applied in a variety of cases. *See, e.g., State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995) (criminal defendant's petition for opening of pretrial suppression motion); *In re J.B.S.*, 122 Wn.2d 131, 856 P.2d 694, 39 A.L.R. 5th 849 (1993) (statutory closure of dependency proceedings does not apply to appeal; absent statute, apply test); *Allied Daily*, 121 Wn.2d at 205 (challenge to constitutionality of statute requiring nondisclosure of information about child sexual assault victims); *Ishikawa*, 97 Wn.2d at 30 (press petition for access to criminal motion to dismiss); *State v. Loukaitis*, 82 Wn. App. 460, 918 P.2d 535 (1996) (press petition for access to juvenile declination proceedings).

[20]*Press-Enterprise Co. v. Superior Court of California*, 478 U.S. 1, 10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986).

[21]*Press-Enterprise*, 478 U.S. at 13-14.

cumstances, or the consent of the individual, are required to open them.

However, because the equal protection analysis of *Young* requires that the probable cause proceedings under RCW 71.09 be conducted similarly to those under RCW 71.05, creating a presumption of closure, the trial court did not need to do an *Ishikawa* analysis for that phase of the proceedings. We note that none of the cases cited as applying the *Ishikawa* test involve a presumptively closed procedure such as exists in this case. Moreover, we believe that the Supreme Court recognized presumptive statutory closure as valid in *J.B.S.*, albeit limiting that mandate to the trial level.

The Times argues that the open justice mandate in Washington Constitution article I, section 10 and the right to open court proceedings derived from the First Amendment of the United States Constitution require that the probable cause proceeding be open to the public. While the Times acknowledges a competing constitutional right of privacy, it argues that the public interest in RCW 71.09 proceedings attaches once the State submits a petition seeking commitment, and a person subject to the petition has a diminished privacy right because the behavior that the statute is designed to correct is private sexual behavior that the person has made public.

██ ██ The right to privacy arises from both the federal and state constitutions. Due process provisions of the Fourth and Fifth Amendments create a fundamental privacy right.[22] Washington Constitution article I, section 7 provides that "No person shall be disturbed in his private affairs . . . without authority of law." Our state constitution provides greater privacy protection than the expectations created by the Fourth Amendment.[23]

The Times asserts that the public's interest in monitor-

---

[22]*See Griswold v. Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L. Ed. 2d 510 (1965).

[23]*See State v. Boland*, 115 Wn.2d 571, 577-78, 800 P.2d 1112 (1990).

ing these proceedings outweighs the person's privacy rights, particularly because this statute is designed to secure treatment for improper private sexual thoughts and motivations.

D.A.H. asserts that the traditional right to privacy in mental health care treatment and in personal sexual matters outweighs any public interest in the proceedings. He argues that the probable cause hearing will depend upon expert testimony evaluating private and embarrassing information regarding his life, his family, and efforts by treatment professionals to diagnosis and deal with his asserted sexual deviancy.

Both arguments have merit but we do not believe it is necessary to balance these interests at this phase of the proceedings. Closure of the probable cause hearing does not unduly interfere with the public's right of access to the justice system or freedom of the press, and it serves a number of valid interests, including protection of whatever privacy interests D.A.H. may have, at least on a preliminary basis.

In a variety of preliminary proceedings, including those to determine preliminary issues of fact and the admissibility of evidence, courts are not required to apply the rules of evidence, except those regarding privilege.[24] In particular, courts are not bound by evidentiary rules in preliminary determinations in criminal cases, in small claims court, in various juvenile proceedings, and in dispositional determinations under RCW 71.05.[25] By contrast, strict compliance with evidentiary rules is required in all other court proceedings.[26] The more relaxed evidentiary rules for preliminary proceedings is appropriate to their purpose, but provides an additional reason for prohibiting wholesale public access to them.

---

[24]ER 1101(c); ER 104(a), (b).

[25]ER 1101(c); *see also, State v. Anderson*, 33 Wn. App. 517, 519-20, 655 P.2d 1196 (1982) (evidence rules inapplicable in sexual psychopath proceeding under RCW 71.06.091).

[26]ER 1101(a).

We conclude that presumptive closure of the probable cause proceedings protects the privacy interests of the person subject to the proceedings. Closure permits full disclosure of all information relevant to a determination of whether to proceed with a trial, while protecting persons found not to need such care and treatment from the potentially serious harm to those interests that may result from an open proceeding.

The Times argues that the presumption of open proceedings applies to all court proceedings. We note, however, that there are numerous proceedings that remain closed through the initial determination, including criminal proceedings (grand jury and inquiry judge proceedings), civil proceedings (judicial and attorney discipline proceedings during the investigatory phases), and statutorily closed proceedings (adoptions, superior court dependency, and juvenile proceedings). While the public may be interested in such proceedings, other overriding policy considerations, including the privacy of parties, mandate their closure. The policy reasons for closing such proceedings before an independent judicial (or quasi-judicial) body makes a threshold determination of probable cause to proceed is that opening such proceedings could seriously and irreparably harm the privacy interests of many persons, including the subject of the proceeding. Furthermore, there is no authority for the proposition that because a person is convicted of a crime, no matter how heinous, that person loses all right to privacy in all other aspects of his life after serving a criminal sentence.

## CROSS-PETITION

D.A.H. seeks reversal of those provisions of the superior court's order allowing public disclosure of the fact of a closed probable cause hearing and of the results of that proceeding. No authority has been cited to us in support of that specific request, and we are not persuaded that

similar constitutional concerns apply in regard to the challenged provisions.

## CONCLUSION

Significant privacy interests are involved when a person is subject to a probable cause hearing under RCW 71.09, the sexual predator act. Of particular concern is the fact that they are not allowed either the Fifth Amendment right to remain silent or the protections of the rules of evidence. Moreover, under *Young,* a person subject to a probable cause hearing under RCW 71.09 is similarly situated to a person subject to other mental health commitment probable cause proceedings. Thus, a presumption exists that these proceedings are closed and the *Ishikawa* test need not be applied.

Affirmed.

GROSSE and BECKER, JJ., concur.