[No. 59462-1-I.    Division One.    April 28, 2008.]

*In the Matter of the Detention of* D.F.F.

---

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Karen Frakes, Deputy,* for respondent.

¶1 DWYER, A.C.J. — The Washington State Supreme Court has, without exception, applied article I, section 10 of the Washington State Constitution so as to preclude trial courts from automatically closing their proceedings to the public.[1] Uniformly, the court's opinions require that the trial court conduct an individualized inquiry into whether a sufficient countervailing interest exists to override the

---

[1] Article I, section 10 provides, "Justice in all cases shall be administered openly, and without unnecessary delay."

public's constitutional right to the open administration of justice before closing any part of any judicial proceeding.

¶2 In its role as rule maker, however, the Supreme Court enacted Superior Court Mental Proceedings Rule (MPR) 1.3, which provides that "[p]roceedings had pursuant to RCW 71.05 shall not be open to the public, unless the person who is the subject of the proceedings or his attorney files with the court a written request that the proceedings be public." In this case, the Whatcom County Superior Court ordered D.F.F. involuntarily committed for 90 days of psychiatric treatment following a jury trial. Adhering to the dictate of MPR 1.3, the trial court ordered that the entirety of the proceeding be closed to the public. Because MPR 1.3 does not permit—much less require—individualized inquiries into the need to close mental illness commitment proceedings, we conclude that the rule violates the mandate of article I, section 10 and, accordingly, reverse the order committing D.F.F.

## Standard of Review

¶3 "Whether a trial court procedure violates the right to a public trial is a question of law we review de novo." *State v. Duckett*, 141 Wn. App. 797, 802, 173 P.3d 948 (2007) (citing *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)). This standard applies to civil as well as criminal appeals. *See Dreiling v. Jain*, 151 Wn.2d 900, 907-08, 93 P.3d 861 (2004).

## Threshold Issues

¶4 Before addressing the merits of D.F.F.'s contentions, we note that D.F.F.'s right to challenge MPR 1.3's constitutionality is not contingent on her having challenged the closure in the trial court. Our Supreme Court has clearly instructed that "a defendant does not waive his right to appeal an improper closure by failing to lodge a contemporaneous objection." *State v. Easterling*, 157 Wn.2d 167,

176 n.8, 137 P.3d 825 (2006) (citing *Brightman*, 155 Wn.2d at 514-15).

¶5 Similarly, we also observe that, contrary to the State's assertions, this case is not moot. "[M]ost civil commitment appeals will be saved from mootness by the significant and adverse collateral consequences to which commitment gives rise." *In re Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983). Here, in addition to committing D.F.F. for treatment, the trial court's order independently impairs D.F.F.'s constitutionally protected right to own a firearm.[2] It also provides the State with the necessary legal predicate to further deprive her of her liberty. The trial court's order thus creates sufficient adverse consequences, other than the 90-day detention that D.F.F. has already completed, such that mootness is not a bar to her appeal.

## Mental Proceedings Rule 1.3

¶6 D.F.F. contends that MPR 1.3 violates article I, section 10's guaranty that "[j]ustice in all cases shall be administered openly." She contends that this is so because, with two exceptions unrelated to general public access, the rule requires that all courtroom proceedings related to commitment for mental illness be automatically and entirely closed:

> Proceedings had pursuant to RCW 71.05 shall not be open to the public, unless the person who is the subject of the proceedings or his attorney files with the court a written request that the proceedings be public. The court in its discretion may permit a limited number of persons to observe the proceedings as a part of a training program of a facility devoted to the healing arts or of an accredited educational institution within the state.

MPR 1.3.

¶7 According to D.F.F., the Supreme Court's opinions uniformly require an individualized analysis resulting

---

[2] The commitment order specifies that, henceforth, possession by D.F.F. of a firearm constitutes a felony.

in specific findings in order for court closures to satisfy article I, section 10. While we acknowledge that mental illness commitment proceedings present significant threats to constitutional and statutory privacy interests, we conclude that D.F.F. reads the Supreme Court's opinions correctly.[3] Accordingly, we hold that MPR 1.3 is unconstitutional as written.

¶8 Our Supreme Court has repeatedly held that article I, section 10 guarantees that the public's interest in access to court proceedings will not be impaired absent a compelling countervailing interest. The court has further held that article I, section 10 guarantees that any restriction on public access must be drawn as narrowly as possible while still effectively protecting that countervailing interest:

> "Justice in all cases shall be administered openly. . . ." Const. art. I, § 10. The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history. The right of the public, including the press, to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified.

*Dreiling*, 151 Wn.2d at 903-04. Application of these principles has repeatedly led the court to conclude that automatic limitations on the openness of court proceedings violate article I, section 10 because they are not based on a case-specific inquiry.

¶9 In *Allied Daily Newspapers of Washington v. Eikenberry*, 121 Wn.2d 205, 848 P.2d 1258 (1993), an association

---

[3] Two sentences in the introduction to the MPRs express a concern not usually articulated in the prelude to court rules:

> The adoption of these rules, which are merely designed to give effect to the statute as it is written, does not in any manner indicate an opinion of the court that the statute is or is not constitutional in any respect. In promulgating them, the court does not in any manner obviate further consideration of any portion of the statute or these rules in a proper case.

of newspapers challenged a statute[4] that provided that the courts could not disclose to the public or the press the identities of child victims of sexual assault, either by disseminating court records or by allowing the public access to court proceedings. *Allied Daily*, 121 Wn.2d at 207-09. The statute did not provide for exceptions to closure. *See Allied Daily*, 121 Wn.2d at 208-09. A unanimous court held that the challenged statute violated article I, section 10, noting that the right of access to the courts "is not absolute . . . and may be outweighed by some competing interest as determined by the trial court on a case-by-case basis." *Allied Daily*, 121 Wn.2d at 211. The court further noted that interests giving rise to the statute's enactment were "compelling: to protect the child victim from further trauma and harm and to ensure the child's privacy as guaranteed under Const. art. 1, § 7." *Allied Daily*, 121 Wn.2d at 211. However, these interests were only sufficient to warrant court closure "on an *individualized basis*." *Allied Daily*, 121 Wn.2d at 211 (emphasis added). Because the statute did "not permit such individualized determinations" regarding the balance between the competing interests—the privacy of the victims and the openness of court proceedings—it was "not in accordance with the [*Seattle Times Co. v.*] *Ishikawa*[, 97 Wn.2d 30, 640 P.2d 716 (1982)] guidelines, and [was] therefore unconstitutional." *Allied Daily*, 121 Wn.2d at 211.

¶10 The guidelines cited in *Allied Daily* are those articulated by the court in *Ishikawa*, 97 Wn.2d 30. *Ishikawa* arose out of a murder prosecution. The trial court, over the objections of the owners of the *Seattle Times* and the *Seattle Post-Intelligencer*, granted the prosecutor's motion to exclude the public from a pretrial hearing. *Ishikawa*, 97 Wn.2d at 32-33. After several unsuccessful attempts to have the records of the hearing released, the newspapers filed a mandamus action against the trial judge, seeking the records. The Supreme Court ruled in favor of the newspa-

---

[4] LAWS OF 1992, ch. 188, § 9.

pers, concluding that the trial judge erred by closing the proceedings. *Ishikawa*, 97 Wn.2d at 32. The court held that the question of whether courtroom proceedings should be closed to the public must always be answered as the result of an individualized determination made according to the specific five-part procedure originally articulated in *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980):

> 1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
>
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> 4. The court must weigh the competing interests of the proponent of closure and the public.
>
> 5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Allied Daily*, 121 Wn.2d at 210-11 (summarizing *Ishikawa*, 97 Wn.2d at 36-39).

¶11 Later Supreme Court opinions continue to follow this approach. In *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995), the court examined the closure of a pretrial suppression hearing in a drug case. At the request of the State, the trial court had cleared the courtroom without first analyzing the concerns set forth in *Ishikawa*. Holding that the requirements of article I, section 22 of the Washington State Constitution[5] mirror the requirements of article I, section 10, the court concluded that the failure of the trial court to engage in the case-specific *Ishikawa* analysis

---

[5] "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed."

rendered the closure order unconstitutional. *Bone-Club*, 128 Wn.2d at 256. Similarly, in *In re Personal Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004), the court held that whether a defendant's public trial right was violated must be determined according to the *Ishikawa* test. *Orange*, 152 Wn.2d at 804-05. Applying the test, the court held that it was unconstitutional to exclude the defendant's family from the courtroom on the basis that the courtroom was too small to accommodate the family. *Orange*, 152 Wn.2d at 812-13. Summarizing *Bone-Club*'s reliance on federal First Amendment cases with parallel reasoning, *Orange* states that " 'the party seeking to close the hearing *must* advance an overriding interest that is likely to be prejudiced, the closure *must* be no broader than necessary to protect that interest, the trial court *must* consider reasonable alternatives to closing the proceeding, and it *must* make findings adequate to support the closure.' " *Orange*, 152 Wn.2d at 806 (quoting *Waller v. Georgia*, 467 U.S. 39, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984)).

¶12 In support of her contention that the *Ishikawa* test's application is mandatory, D.F.F. particularly relies on *Easterling*, 157 Wn.2d 167. In that case, the trial court closed the courtroom during a hearing on the pretrial motions of a criminal defendant's alleged coconspirator without applying the *Ishikawa* test. *Easterling*, 157 Wn.2d at 170-71. The Supreme Court held that the trial court's action violated the Supreme Court's "consistent position of strictly protecting the public's and the press's right to view the administration of justice" guaranteed by article I, section 10. *Easterling*, 157 Wn.2d at 179 (citing *Allied Daily*, 121 Wn.2d 205; *Ishikawa*, 97 Wn.2d 30). We agree with D.F.F. that the court's opinion requires trial courts to analyze the *Ishikawa* factors before closing their proceedings to the public:

> [C]ontrary to what case law and constitutional protections required, the trial court erred when it neither identified a compelling interest warranting the public's exclusion from the pretrial process nor made specific findings that showed it

weighed the competing interest [of the alleged coconspirator] against the public's interest in maintaining unhindered access to judicial proceedings.

*Easterling*, 157 Wn.2d at 179 (citing *Orange*, 152 Wn.2d at 800).

¶13 The sole authority cited by the State for the proposition that a civil commitment trial may be presumptively closed to the public is our opinion in *In re Detention of D.A.H.*, 84 Wn. App. 102, 924 P.2d 49 (1996). However, *D.A.H.* addressed only a preliminary proceeding and, even so, has been directly criticized by the Supreme Court.[6] The dispute in *D.A.H.* arose from a probable cause hearing held pursuant to chapter 71.09 RCW to determine whether a person should be held in a secure facility pending a determination as to whether he was a sexually violent predator. The *Seattle Times* challenged the closure of the proceeding. *D.A.H.*, 84 Wn. App. at 104-05. Analogizing the probable cause hearing to a probable cause hearing held pursuant to chapter 71.05 RCW, we reasoned that MPR 1.3 establishes a presumption of closure that can be rebutted only if the person subject to commitment consents to an open proceeding or if there are "extraordinary circumstances." *D.A.H.*, 84 Wn. App. at 109-10. Accordingly, we held "that probable cause proceedings under RCW 71.09 are presumptively closed." *D.A.H.*, 84 Wn. App. at 105.

¶14 In actuality, MPR 1.3 provides for *no* circumstances, extraordinary or otherwise, in which the public may challenge the closure of a court proceeding held pursuant to chapter 71.05 RCW. Rather, it allows for only two circumstances in which mental illness commitment proceedings may *not* be closed to the public: when open proceedings are requested by the person subject to commitment or that

---

[6] In *In re Detention of Turay*, 139 Wn.2d 379, 414, 986 P.2d 790 (1999), the Supreme Court distinguished *D.A.H.* "because the Court of Appeals explicitly limited its holding in that case to *probable cause hearings* under RCW 71.09.040, and refused to extend its analysis to the actual SVP *commitment trial* under RCW 71.09.060." The court continued, "[i]n addition, we note that *D.A.H.* does not appear to be consistent with case law from this court. We, therefore, question its continued validity." *Turay*, 139 Wn.2d at 414.

person's counsel, or for purposes of observation by students. When a statute or rule provides for specifically enumerated exceptions, we presume that the absence of other exceptions is intentional.[7] Thus, we must conclude that MPR 1.3's drafters intended to exclude any other bases for opening mental illness commitment proceedings, including requests by the public or by the press. Accordingly, contrary to our statement in *D.A.H.*, MPR 1.3 allows for no "extraordinary circumstances" under which the public's right to know what happens during an involuntary commitment proceeding might outweigh the privacy interests of the person subject to commitment. By not even contemplating conditions under which a mental illness commitment proceeding might be opened to the public, MPR 1.3 categorically precludes the type of analysis that might bring such a court closure in line with the constitutional requirements articulated by the Supreme Court.

¶15 "We interpret court rules as if they were statutes." *Farmers Ins. Exch. v. Dietz*, 121 Wn. App. 97, 100, 87 P.3d 769 (2004). As such, we " 'may not strain to interpret [the rule] as constitutional: a plain reading must make the interpretation reasonable.' " *Wash. State Republican Party v. Pub. Disclosure Comm'n*, 141 Wn.2d 245, 281, 4 P.3d 808 (2000) (quoting *Soundgarden v. Eikenberry*, 123 Wn.2d 750, 757, 871 P.2d 1050 (1994)). Any attempt by us to salvage MPR 1.3 would entail a strained and unreasonable reading of the rule. Even assuming that a person subject to civil commitment for reasons of mental illness would in every case seek to, and would be able to, make an individualized showing that the hearing poses a sufficient threat to privacy to warrant closure, MPR 1.3 does not permit—much less require—that the trial court "weigh the competing interests of the proponent of closure and the public." *Allied Daily*,

---

[7] "Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted . . . under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication." *Wash. Natural Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

121 Wn.2d at 211. Further, the presumption of total closure of every proceeding held pursuant to chapter 71.05 RCW is not a rule that is "no broader in its application or duration than necessary to serve its purpose." *Allied Daily*, 121 Wn.2d at 211. Because MPR 1.3 mandates complete and automatic closure, it violates article I, section 10.

¶16 In sum, the Supreme Court has repeatedly articulated an exacting test that trial courts must apply to determine whether the closure of a court proceeding satisfies article I, section 10's open justice requirements. A statute or rule is unconstitutional on its face if there are no "circumstances where [it] can constitutionally be applied." *Republican Party*, 141 Wn.2d at 282 n.14 (citing *In re Det. of Turay*, 139 Wn.2d 379, 417 n.28, 986 P.2d 790 (1999)). MPR 1.3 does not allow for *any* circumstances in which trial judges may perform the analysis required by the Supreme Court. Thus, MPR 1.3 is unconstitutional on its face.

¶17 "The remedy for holding a statute facially unconstitutional is to render the statute totally inoperative." *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004) (citing *Turay*, 139 Wn.2d at 417 n.27). Moreover, a violation of article I, section 10 is not subject to "trivial[ity]" or harmless error analysis. *Easterling*, 157 Wn.2d at 180-81. Where a trial court has failed to weigh the relevant competing interests in closing a court proceeding— whether through its own error or by its compliance with a court rule—the remedy is reversal and remand for further proceedings. In this case, the court closure mandated by MPR 1.3 prevented the trial court, through no error of its own, from performing the analysis required by article I, section 10. Thus, we reverse D.F.F.'s commitment order and

remand this cause for further proceedings consistent with this opinion.[8]

¶18 Reversed.

GROSSE and LAU, JJ., concur.

Review granted at 164 Wn.2d 1034 (2008).

---

[8] Because we remand this matter to the trial court, we need not address the other issues raised on appeal by D.F.F.