183 P.3d 302 (2008)
In the Matter of the DETENTION OF D.F.F.
No. 59462-1-I.
Court of Appeals of Washington, Division 1.
April 28, 2008.
Nancy P. Collins, Washington Appellate Project, Attorney at Law, Seattle, WA, for Appellant.
Karen Frakes, Attorney at Law, Whatcom Co. Pros. Ofc, Bellingham, WA, for Respondent.
*303 DWYER, J.
¶ 1 The Washington State Supreme Court has, without exception, applied article I, section 10 of the Washington State Constitution so as to preclude trial courts from automatically closing their proceedings to the public.[1] Uniformly, the court's opinions require that the trial court conduct an individualized inquiry into whether a sufficient countervailing interest exists to override the public's constitutional right to the open administration of justice before closing any part of any judicial proceeding.
¶ 2 In its role as rule-maker, however, the Supreme Court enacted Superior Court Mental Proceedings Rule (MPR) 1.3, which provides that "[p]roceedings had pursuant to RCW 71.05 shall not be open to the public, unless the person who is the subject of the proceedings or his attorney files with the court a written request that the proceedings be public." In this case, the Whatcom County Superior Court ordered D.F.F. involuntarily committed for 90 days of psychiatric treatment following a jury trial. Adhering to the dictate of MPR 1.3, the trial court ordered that the entirety of the proceeding be closed to the public. Because MPR 1.3 does not permitmuch less requireindividualized inquiries into the need to close mental illness commitment proceedings, we conclude that the rule violates the mandate of article I, section 10 and, accordingly, reverse the order committing D.F.F.

Standard of Review
¶ 3 "Whether a trial court procedure violates the right to a public trial is a question of law we review de novo." State v. Duckett, 141 Wash.App. 797, 802, 173 P.3d 948 (2007) (citing State v. Brightman, 155 Wash.2d 506, 514, 122 P.3d 150 (2005)). This standard applies to civil as well as criminal appeals. See Dreiling v. Jain, 151 Wash.2d 900, 907-08, 93 P.3d 861 (2004).

Threshold Issues
¶ 4 Before addressing the merits of D.F.F.'s contentions, we note that D.F.F.'s right to challenge MPR 1.3's constitutionality is not contingent on her having challenged the closure in the trial court. Our Supreme Court has clearly instructed that "a defendant does not waive his right to appeal an improper closure by failing to lodge a contemporaneous objection." State v. Easterling, 157 Wash.2d 167, 176 n. 8, 137 P.3d 825 (2006) (citing Brightman, 155 Wash.2d at 514-15, 122 P.3d 150).
¶ 5 Similarly, we also observe that, contrary to the State's assertions, this case is not moot. "[M]ost civil commitment appeals will be saved from mootness by the significant and adverse collateral consequences to which commitment gives rise." In re Cross, 99 Wash.2d 373, 377, 662 P.2d 828 (1983). Here, in addition to committing D.F.F. for treatment, the trial court's order independently impairs D.F.F.'s constitutionally protected right to own a firearm.[2] It also provides the State with the necessary legal predicate to further deprive her of her liberty. The trial court's order thus creates sufficient adverse consequences, other than the 90-day detention that D.F.F. has already completed, such that mootness is not a bar to her appeal.

Mental Proceedings Rule 1.3
¶ 6 D.F.F. contends that MPR 1.3 violates article I, section 10's guarantee that "[j]ustice in all cases shall be administered openly." She contends that this is so because, with two exceptions unrelated to general public access, the rule requires that all courtroom proceedings related to commitment for mental illness be automatically and entirely closed:
Proceedings had pursuant to RCW 71.05 shall not be open to the public, unless the person who is the subject of the proceedings or his attorney files with the court a written request that the proceedings be public. The court in its discretion may *304 permit a limited number of persons to observe the proceedings as a part of a training program of a facility devoted to the healing arts or of an accredited educational institution within the state.
MPR 1.3.
¶ 7 According to D.F.F., the Supreme Court's opinions uniformly require an individualized analysis resulting in specific findings in order for court closures to satisfy article I, section 10. While we acknowledge that mental illness commitment proceedings present significant threats to constitutional and statutory privacy interests, we conclude that D.F.F. reads the Supreme Court's opinions correctly.[3] Accordingly, we hold that MPR 1.3 is unconstitutional as written.
¶ 8 Our Supreme Court has repeatedly held that article I, section 10 guarantees that the public's interest in access to court proceedings will not be impaired absent a compelling countervailing interest. The court has further held that article I, section 10 guarantees that any restriction on public access must be drawn as narrowly as possible while still effectively protecting that countervailing interest:
"Justice in all cases shall be administered openly. . . ." Const. art. I, § 10. The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history. The right of the public, including the press, to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified.
Dreiling, 151 Wash.2d at 903-904, 93 P.3d 861. Application of these principles has repeatedly led the court to conclude that automatic limitations on the openness of court proceedings violate article I, section 10 because they are not based on a case-specific inquiry.
¶ 9 In Allied Daily Newspapers of Washington v. Eikenberry, 121 Wash.2d 205, 848 P.2d 1258 (1993), an association of newspapers challenged a statute[4] that provided that the courts could not disclose to the public or the press the identities of child victims of sexual assault, either by disseminating court records or by allowing the public access to court proceedings. Allied Daily, 121 Wash.2d at 207-09, 848 P.2d 1258. The statute did not provide for exceptions to closure. See Allied Daily, 121 Wash.2d at 208-09, 848 P.2d 1258. A unanimous court held that the challenged statute violated article I, section 10, noting that the right of access to the courts "is not absolute . . . and may be outweighed by some competing interest as determined by the trial court on a case-by-case basis." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258. The court further noted that interests giving rise to the statute's enactment were "compelling: to protect the child victim from further trauma and harm and to ensure the child's privacy as guaranteed under Const. art. 1, § 7." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258. However, these interests were only sufficient to warrant court closure "on an individualized basis." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258 (emphasis added). Because the statute did "not permit such individualized determinations" regarding the balance between the competing intereststhe privacy of the victims and the openness of court proceedingsit was "not in accordance with the Ishikawa guidelines, and [was] therefore unconstitutional." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258.
¶ 10 The guidelines cited in Allied Daily are those articulated by the court in Seattle Times Co. v. Ishikawa, 97 Wash.2d 30, 640 P.2d 716 (1982). Ishikawa arose out of a murder prosecution. The trial court, over *305 the objections of the owners of the Seattle Times and the Seattle Post-Intelligencer, granted the prosecutor's motion to exclude the public from a pretrial hearing. Ishikawa, 97 Wash.2d at 32-33, 640 P.2d 716. After several unsuccessful attempts to have the records of the hearing released, the newspapers filed a mandamus action against the trial judge, seeking the records. The Supreme Court ruled in favor of the newspapers, concluding that the trial judge erred by closing the proceedings. Ishikawa, 97 Wash.2d at 32, 640 P.2d 716. The court held that the question of whether courtroom proceedings should be closed to the public must always be answered as the result of an individualized determination made according to the specific five-part procedure originally articulated in Federated Publications, Inc. v. Kurtz, 94 Wash.2d 51, 615 P.2d 440 (1980):
1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.
2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
4. The court must weigh the competing interests of the proponent of closure and the public.
5. The order must be no broader in its application or duration than necessary to serve its purpose.
Allied Daily, 121 Wash.2d at 210-11, 848 P.2d 1258 (summarizing Ishikawa, 97 Wash.2d at 36-39, 640 P.2d 716).
¶ 11 Later Supreme Court opinions continue to follow this approach. In State v. Bone-Club, 128 Wash.2d 254, 906 P.2d 325 (1995), the court examined the closure of a pretrial suppression hearing in a drug case. At the request of the State, the trial court had cleared the courtroom without first analyzing the concerns set forth in Ishikawa. Holding that the requirements of article I, section 22 of the Washington State Constitution[5] mirror the requirements of article I, section 10, the court concluded that the failure of the trial court to engage in the case-specific Ishikawa analysis rendered the closure order unconstitutional. Bone-Club, 128 Wash.2d at 256, 906 P.2d 325. Similarly, in In re Personal Restraint of Orange, 152 Wash.2d 795, 100 P.3d 291 (2004), the court held that whether a defendant's public trial right was violated must be determined according to the Ishikawa test. Orange, 152 Wash.2d at 804-05, 100 P.3d 291. Applying the test, the court held that it was unconstitutional to exclude the defendant's family from the courtroom on the basis that the courtroom was too small to accommodate the family. Orange, 152 Wash.2d at 812-13, 100 P.3d 291. Summarizing Bone-Club's reliance on federal First Amendment cases with parallel reasoning, Orange states that "`the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.'" Orange, 152 Wash.2d at 806, 100 P.3d 291 (quoting Waller v. Georgia, 467 U.S. 39, 48, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)) (emphasis added in Orange).
¶ 12 In support of her contention that the Ishikawa test's application is mandatory, D.F.F. particularly relies on State v. Easterling, 157 Wash.2d 167, 137 P.3d 825 (2006). In that case, the trial court closed the courtroom during a hearing on the pretrial motions of a criminal defendant's alleged co-conspirator without applying the Ishikawa test. Easterling, 157 Wash.2d at 170-71, 137 P.3d 825. The Supreme Court held that the trial court's action violated the Supreme Court's "consistent position of strictly protecting the public's and the press's right to view the administration of justice" guaranteed by article I, section 10. Easterling, 157 Wash.2d at 179, 137 P.3d 825 (citing Allied Daily, 121 Wash.2d at 205, 848 P.2d 1258; *306 Ishikawa, 97 Wash.2d at 30, 640 P.2d 716). We agree with D.F.F. that the court's opinion requires trial courts to analyze the Ishikawa factors before closing their proceedings to the public:
[C]ontrary to what case law and constitutional protections required, the trial court erred when it neither identified a compelling interest warranting the public's exclusion from the pretrial process nor made specific findings that showed it weighed the competing interest [of the alleged co-conspirator] against the public's interest in maintaining unhindered access to judicial proceedings.
Easterling, 157 Wash.2d at 179, 137 P.3d 825 (citing Orange, 152 Wash.2d at 800, 100 P.3d 291).
¶ 13 The sole authority cited by the State for the proposition that a civil commitment trial may be presumptively closed to the public is our opinion in In re Detention of D.A.H., 84 Wash.App. 102, 924 P.2d 49 (1996). However, D.A.H. only addressed a preliminary proceeding and, even so, has been directly criticized by the Supreme Court.[6] The dispute in D.A.H. arose from a probable cause hearing held pursuant to chapter 71.09 RCW to determine whether a person should be held in a secure facility pending a determination as to whether he was a sexually violent predator. The Seattle Times challenged the closure of the proceeding. D.A.H., 84 Wash.App. at 104-05, 924 P.2d 49. Analogizing the probable cause hearing to a probable cause hearing held pursuant to chapter 71.05 RCW, we reasoned that MPR 1.3 establishes a presumption of closure that can only be rebutted if the person subject to commitment consents to an open proceeding or if there are "extraordinary circumstances." D.A.H., 84 Wash.App. at 109-10, 924 P.2d 49. Accordingly, we held "that probable cause proceedings under RCW 71.09 are presumptively closed." D.A.H., 84 Wash.App. at 105, 924 P.2d 49.
¶ 14 In actuality, MPR 1.3 provides for no circumstances, extraordinary or otherwise, in which the public may challenge the closure of a court proceeding held pursuant to chapter 71.05 RCW. Rather, it allows for only two circumstances in which mental illness commitment proceedings may not be closed to the public: when open proceedings are requested by the person subject to commitment or that person's counsel, or for purposes of observation by students. When a statute or rule provides for specifically enumerated exceptions, we presume that the absence of other exceptions is intentional.[7] Thus, we must conclude that MPR 1.3's drafters intended to exclude any other bases for opening mental illness commitment proceedings, including requests by the public or by the press. Accordingly, contrary to our statement in D.A.H., MPR 1.3 allows for no "extraordinary circumstances" under which the public's right to know what happens during an involuntary commitment proceeding might outweigh the privacy interests of the person subject to commitment. By not even contemplating conditions under which a mental illness commitment proceeding might be opened to the public, MPR 1.3 categorically precludes the type of analysis that might bring such a court closure in line with the constitutional requirements articulated by the Supreme Court.
¶ 15 "We interpret court rules as if they were statutes." Farmers Ins. Exch. v. Dietz, 121 Wash.App. 97, 100, 87 P.3d 769 (2004). As such, we "`may not strain to interpret [the rule] as constitutional: a plain reading must make the interpretation reasonable.'" *307 Wash. State Republican Party v. Pub. Disclosure Comm'n, 141 Wash.2d 245, 281, 4 P.3d 808 (2000) (quoting Soundgarden v. Eikenberry, 123 Wash.2d 750, 757, 871 P.2d 1050 (1994)). Any attempt by us to salvage MPR 1.3 would entail a strained and unreasonable reading of the rule. Even assuming that a person subject to civil commitment for reasons of mental illness would in every case seek to, and would be able to, make an individualized showing that the hearing poses a sufficient threat to privacy to warrant closure, MPR 1.3 does not permitmuch less requirethat the trial court "weigh the competing interests of the proponent of closure and the public." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258. Further, the presumption of total closure of every proceeding held pursuant to chapter 71.05 RCW is not a rule that is "no broader in its application or duration than necessary to serve its purpose." Allied Daily, 121 Wash.2d at 211, 848 P.2d 1258. Because MPR 1.3 mandates complete and automatic closure, it violates article I, section 10.
¶ 16 In sum, the Supreme Court has repeatedly articulated an exacting test that trial courts must apply to determine whether the closure of a court proceeding satisfies article I, section 10's open justice requirements. A statute or rule is unconstitutional on its face if there are no "circumstances where [it] can constitutionally be applied." Republican Party, 141 Wash.2d at 282 n. 14, 4 P.3d 808 (citing Turay, 139 Wash.2d at 417 n. 28, 986 P.2d 790). MPR 1.3 does not allow for any circumstances in which trial judges may perform the analysis required by the Supreme Court. Thus, MPR 1.3 is unconstitutional on its face.
¶ 17 "The remedy for holding a statute facially unconstitutional is to render the statute totally inoperative." City of Redmond v. Moore, 151 Wash.2d 664, 669, 91 P.3d 875 (2004) (citing Turay, 139 Wash.2d at 417 n. 27, 986 P.2d 790). Moreover, a violation of article I, section 10 is not subject to "triviality" or harmless error analysis. Easterling, 157 Wash.2d at 180-81, 137 P.3d 825. Where a trial court has failed to weigh the relevant competing interests in closing a court proceedingwhether through its own error or by its compliance with a court rule the remedy is reversal and remand for further proceedings. In this case, the court closure mandated by MPR 1.3 prevented the trial court, through no error of its own, from performing the analysis required by article I, section 10. Thus, we reverse D.F.F.'s commitment order and remand this cause for further proceedings consistent with this opinion.[8]
¶ 18 Reversed.
WE CONCUR: LINDA LAU and GROSSE, JJ.
NOTES
[1] Article I, section 10 provides: "Justice in all cases shall be administered openly, and without unnecessary delay."
[2] The commitment order specifies that, henceforth, possession by D.F.F. of a firearm constitutes a felony.
[3] Two sentences in the introduction to the MPRs express a concern not usually articulated in the prelude to court rules:

The adoption of these rules, which are merely designed to give effect to the statute as it is written, does not in any manner indicate an opinion of the court that the statute is or is not constitutional in any respect. In promulgating them, the court does not in any manner obviate further consideration of any portion of the statute or these rules in a proper case.
[4] LAWS OF 1992, ch. 188, § 9.
[5] "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed."
[6] In In re Detention of Turay, 139 Wash.2d 379, 414, 986 P.2d 790 (1999), the Supreme Court distinguished D.A.H. "because the Court of Appeals explicitly limited its holding in that case to probable cause hearings under RCW 71.09.040, and refused to extend its analysis to the actual SVP commitment trial under RCW 71.09.060." The court continued, "[i]n addition, we note that D.A.H. does not appear to be consistent with case law from this court. We, therefore, question its continued validity." Turay, 139 Wash.2d at 414, 986 P.2d 790.
[7] "Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted . . . under the maxim expressio unius est exclusio alterius-specific inclusions exclude implication." Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wash.2d 94, 98, 459 P.2d 633 (1969).
[8] Because we remand this matter to the trial court, we need not address the other issues raised on appeal by D.F.F.