[No. 30416-0-I.   Division One.   February 13, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH
BONECLUB, *Appellant*.

*Rita J. Griffith* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Craig Chambers, Deputy,* for respondent.

PEKELIS, C.J. — Boneclub appeals his conviction for possession and delivery of a controlled substance. He assigns error to three of the trial court's decisions: (1) the closure of the courtroom to spectators during the pretrial testimony of an undercover police officer, (2) denial of the motion to dismiss for violation of the speedy trial rule, and (3) admission of his statements to the police. Boneclub also contends that the trial was tainted by prosecutorial misconduct. We affirm.

## FACTS

Boneclub was convicted of two counts of unlawful possession of cocaine and four counts of unlawful distribution of cocaine. In early 1991, police agents purchased cocaine from Boneclub on two separate occasions. Shortly thereafter, Boneclub was arrested on an unrelated warrant. The arresting officer discovered a large amount of cash and a baggie of cocaine in Boneclub's possession. On August 2, 1991, the deputy prosecuting attorney for Whatcom County filed an information charging Boneclub with unlawful possession of cocaine with intent to deliver. After his arraignment, Boneclub was released on bail.

While he was awaiting trial for the first incident, police conducted two more controlled buys from him. He was again arrested. The State filed an amended information adding a second count of possession of cocaine with the intent to deliver.

A CrR 3.5 hearing was held on January 9, 1992. At the hearing, the State requested that the courtroom be cleared during the testimony of Detective Frakes because he often worked undercover. The motion was granted. At the conclusion of the hearing, the trial court found that Boneclub's statements to Frakes were voluntary and were not the product of any promises of leniency. It, therefore, admitted them into evidence.

The trial ended with the jury finding Boneclub guilty of possession with intent to deliver. This timely appeal followed.

RIGHT TO A PUBLIC TRIAL

Boneclub contends that the trial court deprived him of his right to a public trial when it cleared the courtroom during Detective Frakes' testimony at the CrR 3.5 hearing. The State requested that the proceeding be closed because Frakes worked as an undercover narcotics agent and it wanted to avoid disclosing his identity.

Boneclub's argument focuses only on his right to a public trial under the Washington Constitution. The question of whether excluding the public from a pretrial hearing in order to protect the identity of an undercover narcotics agent violates the constitution is an issue of first impression in Washington. Boneclub cites two cases in support of his argument, *State v. Collins*, 50 Wn.2d 740, 314 P.2d 660 (1957) and *State v. Marsh*, 126 Wash. 142, 217 P. 705 (1923). Neither of these cases is factually similar to this case. More importantly, however, these cases were decided before the Washington Supreme Court announced a set of guidelines for determining when the closure of a pretrial hearing violates the right to a public trial.

In *Federated Publications, Inc. v. Kurtz*, 94 Wn.2d 51, 615 P.2d 440 (1980), the court reviewed the decision to close a pretrial suppression hearing. The media opposed the closure. The court found that the public's right to an open trial was not absolute and that it might sometimes be outweighed by a defendant's right to a fair trial. *Kurtz*, at 60. It, therefore, upheld the closure. When reaching this decision, the court enunciated a set of guidelines to assist in the balancing of competing interests when ruling on a motion to close a hearing. *Kurtz*, at 62-63.

These guidelines were then reaffirmed in *Allied Daily Newspapers v. Eikenberry*, 121 Wn.2d 205, 848 P.2d 1258 (1993). In *Eikenberry*, the court examined the constitutionality of a statute which required courts to ensure that information identifying child victims of sexual assault is not disclosed to the public during the course of any judicial proceeding or in court records. Again the closure of proceed-

ings was challenged by members of the media. *Eikenberry*, at 207.

The *Eikenberry* guidelines were as follows:

1. The proponent of closure or sealing must make some showing of the need for doing so, and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a "serious and imminent threat" to that right.

2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

4. The court must weigh the competing interest of the proponent of closure and the public.

5. The order must be no broader in its application or duration than necessary to serve its purpose.

*Eikenberry*, at 210-11.

The *Eikenberry* court then went on to examine the competing interests in the case. It found the interest of protecting the child victim from further trauma and harm and to ensure the child's privacy was compelling. It concluded that "[t]hese interests on an individualized basis may be sufficient to warrant court closure." *Eikenberry*, at 211. However, the court held that the statute at issue was unconstitutional because it did not allow for the type of individualized case-by-case analysis required by the guidelines. *Eikenberry*, at 211.

The *Eikenberry* and *Kurtz* courts were, of course, focused on the public's right to access to court proceedings under article 1, section 10 of the state constitution rather than on a defendant's right to a public trial under article 1, section 22. Nevertheless, we conclude that these guidelines are applicable to the closure of pretrial hearings when the right asserted is the defendant's right to a public trial. Thus, when ruling on a motion to close a hearing, a trial court must balance the competing interests asserted by the defendant and the proponent of closure. However, where the defendant opposes closure based on his right to a public trial, the State must have a compelling interest in closure, not merely a "serious and imminent threat" to its interest.

Several courts have found that the State has a compelling interest in protecting the identity of undercover narcotics offi-

cers which justifies temporarily closing a proceeding. In *People v. Seyler*, 144 Ill. App. 3d 250, 252, 494 N.E.2d 267, 269 (1986), the court noted that a defendant's Sixth Amendment right to have spectators present at trial was not absolute but must be balanced against other interests justifying excluding the public. The court "consider[ed] the preservation of the anonymity of a narcotics agent working undercover to be a persuasive and substantial justification for the exclusion of spectators during the agent's testimony." *Seyler*, at 254. *See also United States ex rel. Lloyd v. Vincent*, 520 F.2d 1272 (2d Cir.) (holding that exclusion of spectators while an undercover agent was testifying did not violate the defendant's right to a public trial), *cert. denied*, 423 U.S. 937 (1975).

Similarly, we conclude that the State had a legitimate and compelling interest in protecting Detective Frakes' identity. Under the *Eikenberry* balancing test this interest outweighed Boneclub's interest in allowing spectators to be present. The trial court did not violate Boneclub's right to a public trial when it excluded the public during Frakes' testimony at the pretrial hearing.

The remainder of this opinion, wherein we address Boneclub's other assignments of error, has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. *See* RCW 2.06.040.

BAKER and AGID, JJ., concur.

After modification, further reconsideration denied March 28, 1995.

Review granted at 127 Wn.2d 1008 (1995).