[No. 66428-0-I.   Division One.   July 16, 2012.]

AARON HUNDTOFTE AT AL., *Plaintiffs*, v. IGNACIO ENCARNACIÓN,[†] ET AL., *Respondents*, KING COUNTY SUPERIOR COURT, OFFICE OF JUDICIAL ADMINISTRATION, *Appellant*.

[†] The trial court record incorrectly indicates that Encarnación's name is "Encarnacion Ignacio"—thus transposing his first and last names—and misspells Farias's name as "Farras." The parties are referred to by their actual names—Ignacio Encarnación and Norma Karla Farias—herein.

500

*Daniel T. Satterberg, Prosecuting Attorney,* and *Sarah Jackson* and *Thomas W. Kuffel, Deputies,* for appellant.

*Allyson G. O'Malley-Jones, Eric Dunn,* and *Leticia Camacho* (of *Northwest Justice Project*), for respondents.

*Douglas B. Klunder* on behalf of American Civil Liberties Union of Washington, amicus curiae.

*Katherine George* on behalf of Allied Daily Newspapers of Washington and Coalition for Open Government, amici curiae.

*Leona Bratz* and *Rory B. O'Sullivan* on behalf of King County Bar Housing Justice Project, amicus curiae.

¶1 DWYER, J. — Article I, section 10 of the Washington Constitution confers upon the public the right to open judicial proceedings and records. This presumption of openness, although not absolute, may be limited only by significant countervailing interests. In determining whether restricted access is justified, the trial court must engage in a five-step analysis in which the asserted interest is weighed against the public's constitutional right. Because openness is presumed, the determination of whether restricted access is justified must be made on a case-specific basis.

¶2 Here, the trial court granted a motion to redact a court record, ordering that the full names of the defendants in an unlawful detainer action be replaced with their initials in the court's electronic records index. Because nothing distinguishes these particular defendants from other defendants in unlawful detainer actions who were also not ultimately evicted, the relief afforded by the trial court, if deemed appropriate, would similarly be available to all such litigants. However, no statutory or constitutional provision protects the interest asserted by the applicants for relief herein. Consequently, such wide-ranging relief is inappropriate. Moreover, such a de facto "automatic limitation" on the public's right to open courts effectively precludes the case-specific analysis mandated by article I, section 10.

¶3 The trial court abused its discretion by overvaluing the asserted interest when weighing that interest against the public's constitutional right, in effect negating the presumption of the open administration of justice. Accordingly, we reverse the trial court's order granting the motion to redact.

I

¶4 On September 10, 2009, the owners of an apartment building in Burien, Aaron Hundtofte and Kent Alexander, filed an unlawful detainer action against Ignacio Encarnación and Norma Karla Farias, who were, at the time, building tenants. The parties resolved the case by stipulation and entry of an agreed order on November 12, 2009. Encarnación and Farias were not evicted from the apartment. Pursuant to the agreed order, the tenants agreed to leave the apartment by December 1, 2009; in exchange, they retained their rent payments for the months of September, October, and November. Hundtofte and Alexander also agreed to provide Encarnación and Farias with a favorable rental reference.

¶5 Encarnación and Farias thereafter filed a motion to redact the court record in the unlawful detainer case. Specifically, they sought an order requiring the substitution of their initials for their full names in the Superior Court Management Information System (SCOMIS), the court's publicly available electronic record index. Encarnación and Farias alleged that they had been denied rental housing based upon the SCOMIS record of the unlawful detainer action, which shows that such an action had previously been filed against them. They contended that redaction of the SCOMIS record was justified because the existence of the record entry impaired their access to rental housing.

¶6 Encarnación and Farias filed their motion to redact with the Ex Parte and Probate Department of the King County Superior Court. On May 26, 2010, a commissioner of the court granted the unopposed motion, directing the superior court clerk to replace Encarnación's and Farias's names with their initials in the SCOMIS index. An attorney representing the King County Superior Court Office of Judicial Administration[1] thereafter provided briefing to the trial court, opposing the ordered redaction. The Clerk contended that such a redaction would be tantamount to destruction of a court record and, thus, improper absent an authorizing statute.

¶7 Meanwhile, Encarnación and Farias filed a motion to affirm the commissioner's order in the superior court, apparently because the Clerk had not yet complied with the redaction order. The motion was denied. Encarnación and Farias appealed from the order denying their motion to affirm the redaction order. A commissioner of this court determined that the order was not appealable as a matter of right and, thus, granted to the superior court the full authority to hear and decide any related motions brought by Encarnación and Farias. Encarnación and Farias thereafter filed in the superior court a CR 60(b) motion for relief

---

[1] In all other Washington counties, this office is headed by the constitutional county clerk. For clarity, we will refer to this intervening party as "the Clerk."

from the order denying their motion to affirm the redaction order, characterizing that order as a denial of a hearing on the motion to redact.

¶8 Although the Clerk's office was not a named party in the case, the Clerk submitted a response to the motion to vacate, asserting that the relief requested—redaction of Encarnación's and Farias's full names from the SCOMIS record—effectively constitutes the unlawful destruction of a court record in contravention of General Rule (GR) 15(h). The trial court determined that, although the Clerk did not have standing to oppose the motion for relief, the Clerk would have standing "at the ultimate hearing where the Court may or may not direct the clerk's office to do something." The trial court granted relief in the form of scheduling a hearing on the merits of the motion to redact.

¶9 At the subsequent hearing, the trial court granted Encarnación's and Farias's motion to redact the court record. The trial court determined that it was bound by this court's decision in *Indigo Real Estate Services v. Rousey*, 151 Wn. App. 941, 215 P.3d 977 (2009), and, thus, the court rejected the Clerk's contention that GR 15 prohibits the replacement of a party's full name with the party's initials in the SCOMIS index. The trial court then indicated that, in granting the motion for redaction, it had applied GR 15 and the requirements set forth in *Seattle Times Co. v. Ishikawa*, 97 Wn.2d 30, 640 P.2d 716 (1982).

¶10 On November 18, 2010, the trial court entered findings of fact and conclusions of law in support of its redaction order. The court found that a prospective future landlord "could readily discover" the unlawful detainer record and that landlords "commonly deny rental housing" to applicants who have such records. Thus, the court determined, the record "present[ed] a significant risk" that Encarnación and Farias would be denied housing in the future. The trial court also found that the unlawful detainer action had been dismissed, that the court had neither entered findings against the tenants nor ordered their

eviction, and that Encarnación and Farias had "raised a meritorious defense to the 'eviction' action."

¶11 Based upon its factual findings, the trial court determined that Encarnación's and Farias's need to obtain rental housing constituted a "compelling privacy interest," as required by GR 15(c)(2) for redaction of a court record, because (1) they were not homeowners, (2) they then lived in a home that did not suit their needs, and (3) they had "a good faith expectation that they [would] need to change residences in the near future." The court further determined that the SCOMIS record presented "a serious and imminent threat" to the applicants' abilities to obtain housing because (1) they had already been denied rental housing due to this record and (2) they had "good reason to expect" that other potential landlords would similarly reject them based upon the existence of the record.

¶12 In weighing Encarnación's and Farias's asserted interest against the public interest in open court records, the trial court determined that "in this specific action," their interest outweighed the public interest because (1) the applicants "were not culpable and did nothing improper to cause their removal from the property" and, thus, the record would not properly assist landlords in detecting irresponsible tenants and (2) redaction of the record would not "materially impair members of the public from utilizing the records of this action for other public purposes." The trial court noted that, although Encarnación and Farias "gave timely and proper notice" to Hundtofte and Alexander, neither landlord "presented any written objection to the relief requested." The court acknowledged that "no person [had] appeared on behalf of residential landlords or tenant-screening companies" but noted that it had considered remarks that the Washington Landlord Association (WLA) had previously presented to a state senate committee regarding the sealing of unlawful detainer records. The trial court additionally noted that, in those remarks, the WLA had "expressed support for sealing unlawful detainer records in some instances."

¶13 Finally, the trial court determined that redacting Encarnación's and Farias's names from the SCOMIS record constituted the "least restrictive effective means to preserve [their] rental housing prospects." Thus, the court ordered the Clerk to "delete [Encarnación's and Farias's] full names . . . from the SCOMIS database . . . and replace, or cause to be replaced, their full names with their initials." The trial court noted that the need for redaction would "substantially diminish after seven years, when, under the Fair Credit Reporting Act, it will become unlawful for consumer reporting agencies (such as tenant-screening firms) to report this action." Accordingly, the trial court ordered that the redaction "shall remain in effect until November 12, 2016," the date on which that statute "will prohibit consumer reporting agencies from reporting this action to prospective housing providers."

¶14 The Clerk appeals.

## II

¶15 We review a trial court's decision to redact or seal a court record for abuse of discretion. *Rousey*, 151 Wn. App. at 946. A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *State v. McEnry*, 124 Wn. App. 918, 924, 103 P.3d 857 (2004). "In reviewing a trial court's findings and conclusions, we determine whether substantial evidence supports challenged findings of fact and, in turn, whether the findings support the conclusions of law." *McEnry*, 124 Wn. App. at 924. "Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding." *McEnry*, 124 Wn. App. at 924.

¶16 Article I, section 10 of our state constitution requires that "[j]ustice in all cases shall be administered openly." This mandate "guarantees the public and the press a right of access to judicial proceedings and court docu-

ments in both civil and criminal cases." *Dreiling v. Jain*, 151 Wn.2d 900, 908, 93 P.3d 861 (2004). Our Supreme Court has repeatedly iterated the significance of this constitutional guarantee:

> The open operation of our courts is of utmost public importance. Justice must be conducted openly to foster the public's understanding and trust in our judicial system and to give judges the check of public scrutiny. Secrecy fosters mistrust. This openness is a vital part of our constitution and our history.

*Dreiling*, 151 Wn.2d at 903-04; *see also In re Det. of D.F.F.*, 172 Wn.2d 37, 40, 256 P.3d 357 (2011) (*D.F.F.* II) ("The open administration of justice assures the structural fairness of the proceedings, affirms their legitimacy, and promotes confidence in the judiciary."); *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 211, 848 P.2d 1258 (1993) ("Openness of courts is essential to the courts' ability to maintain public confidence in the fairness and honesty of the judicial branch of government as being the ultimate protector of liberty, property, and constitutional integrity.").

¶17 Resort to any exception to this "vital constitutional safeguard" is "appropriate only under the most unusual circumstances." *D.F.F.* II, 172 Wn.2d at 41. Accordingly, the right of the public "to access trials and court records may be limited only to protect significant interests, and any limitation must be carefully considered and specifically justified." *Dreiling*, 151 Wn.2d at 904.

¶18 "In determining whether court records may be sealed from public disclosure, we start with the presumption of openness." *Rufer v. Abbott Labs.*, 154 Wn.2d 530, 540, 114 P.3d 1182 (2005).

> The burden of persuading the court that access must be restricted to prevent a serious and imminent threat to an important interest shall be on the proponent unless closure is sought to protect the accused's fair trial right. Because courts are presumptively open, the burden of justification should rest on the parties seeking to infringe the public's right.

*Ishikawa,* 97 Wn.2d at 37-38. Moreover, even where no party opposes a closure or redaction request, the trial court has an "independent obligation to safeguard the open administration of justice. Article I, section 10 is mandatory." *State v. Duckett,* 141 Wn. App. 797, 804, 173 P.3d 948 (2007). Accordingly, the trial court must "conduct an individualized inquiry into whether a sufficient countervailing interest exists to override the public's constitutional right to the open administration of justice before closing any part of any judicial proceeding." *In re Det. of D.F.F.,* 144 Wn. App. 214, 217-18, 183 P.3d 302 (2008) (*D.F.F.* I), *aff'd,* 172 Wn.2d 37.

¶19 The standard to be applied in determining whether "exceptional circumstances" exist—thus permitting an exception to the constitutional mandate of open judicial proceedings and records—was established by our Supreme Court in the context of a defendant's right to a fair trial. *Federated Publ'ns, Inc. v. Kurtz,* 94 Wn.2d 51, 615 P.2d 440 (1980). In *Kurtz,* the trial court ordered the closure of a pretrial suppression hearing and the temporary sealing of the suppression hearing file in order to prevent publicity that would have jeopardized the defendant's article I, section 22 right to an impartial jury. 94 Wn.2d at 53. Our Supreme Court upheld the trial court's closure and sealing orders, concluding that the circumstances therein "were exceptional enough to justify closure."[2] *Kurtz,* 94 Wn.2d at 60. The court determined that article I, section 22, at a minimum, required that an accused be provided with an " 'impartial jury free from outside influences' " and that, in weighing the defendant's right to a fair trial against other constitutional rights, the balance must " 'never be weighed

---

[2] The facts of that case were, indeed, exceptional. The defendant was charged with murder in the second degree. *Kurtz,* 94 Wn.2d at 52. The *Bellingham Herald* thereafter published 16 newspaper articles concerning the alleged homicide. *Kurtz,* 94 Wn.2d at 52. Based upon the notoriety of the case, the trial court granted the defendant's motion for a change of venue. *Kurtz,* 94 Wn.2d at 63. However, the trial was moved to adjacent Skagit County, where the *Herald* was also circulated. *Kurtz,* 94 Wn.2d at 63. Moreover, the *Herald* had twice violated the Bench-Bar-Press guidelines by publishing reports of proposed ballistics evidence despite the trial court's request that it refrain from doing so. *Kurtz,* 94 Wn.2d at 63.

against the accused.' " *Kurtz*, 94 Wn.2d at 61 (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 362, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966)). Thus, the court concluded that "the public's right of access under [article I,] section 10 must be interpreted in light of these requirements." *Kurtz*, 94 Wn.2d at 61.

¶20 The standard set forth in *Kurtz* was expanded in *Ishikawa*, 97 Wn.2d 30. There, the trial court closed a pretrial suppression hearing involving a motion to dismiss. *Ishikawa*, 97 Wn.2d at 32. Unlike in *Kurtz*, however, the trial court, in ordering closure, relied upon asserted interests other than the defendant's right to a fair trial. *Ishikawa*, 97 Wn.2d at 36-37. Acknowledging that the propriety of closure, an extreme remedy, depends upon the significance of the asserted conflicting interest, our Supreme Court held that "closure to protect the defendant's right to a fair trial should be treated somewhat differently from closure based entirely on the protection of other interests." *Ishikawa*, 97 Wn.2d at 37. Accordingly, the court, expanding upon the framework set forth in *Kurtz*, developed a five-step analysis that trial courts must follow in ruling on motions to restrict access to court records or proceedings. *Ishikawa*, 97 Wn.2d at 37-39.

¶21 First, the proponent of closure of court proceedings or sealing of court records "must make some showing of the need therefor." *Ishikawa*, 97 Wn.2d at 37. "The quantum of need which would justify restrictions on access differs depending on whether a defendant's Sixth Amendment right to a fair trial would be threatened." *Ishikawa*, 97 Wn.2d at 37. When closure is sought to protect a defendant's fair trial rights, only a " 'likelihood of jeopardy' " need be shown. *Ishikawa*, 97 Wn.2d at 37 (quoting *Kurtz*, 94 Wn.2d at 62). However, "a higher threshold will be required" where other interests are at stake. *Ishikawa*, 97 Wn.2d at 37. Where any interest other than a defendant's right to a fair trial is sought to be protected, a "serious and imminent threat to some other important interest" must be demonstrated. *Ishikawa*, 97 Wn.2d at 37.

¶22 Second, anyone present when the motion for restricted access is made must be given an opportunity to object. *Ishikawa*, 97 Wn.2d at 38. Third, the court must determine that "the requested method for curtailing access would be both the least restrictive means available and effective in protecting the interests threatened." *Ishikawa*, 97 Wn.2d at 38. Fourth, the court must weigh the competing interests of the proponent of restricted access and the public. *Ishikawa*, 97 Wn.2d at 38. In so doing, the court must consider any alternative approaches suggested, and its "consideration of these issues should be articulated in its findings and conclusions, which should be as specific as possible rather than conclusory." *Ishikawa*, 97 Wn.2d at 38. Finally, the court's order " 'must be no broader in its application or duration than necessary to serve its purpose.' " *Ishikawa*, 97 Wn.2d at 39 (quoting *Kurtz*, 94 Wn.2d at 64).

¶23 In addition to complying with the requirements set forth in *Ishikawa*, a trial court must also adhere to the procedures set forth in GR 15 when ruling on a motion to redact court records. *See State v. Waldon*, 148 Wn. App. 952, 967, 202 P.3d 325 (2009) (holding that, when ruling on a motion to redact or seal court records, the trial court must apply both the requirements of GR 15 and the five-step analysis set forth in *Ishikawa*). GR 15(a) "sets forth a uniform procedure for the destruction, sealing, and redaction of court records." Pursuant to this rule, a trial court may order that court records be sealed or redacted "if the court makes and enters written findings that the specific sealing or redaction is justified by *identified compelling* privacy or safety concerns that outweigh the public interest in access to the court record." GR 15(c)(2) (emphasis added). The rule sets forth six possible findings that implicate "[s]ufficient privacy or safety concerns that may be weighed against the

public interest." GR 15(c)(2); *see* GR 15(c)(2)(A)-(F).[3] One such finding is that an "identified compelling circumstance exists that requires the sealing or redaction." GR 15(c)(2)(F). "Agreement of the parties alone does not constitute a sufficient basis for the sealing or redaction of court records." GR 15(c)(2).

¶24 The determination of whether the asserted interest outweighs the public's constitutional right to the open administration of justice must be made on a case-by-case basis. This is because, although the right to open court records and proceedings is not absolute, "protection of this basic constitutional right clearly calls for a trial court to resist a closure motion except under the most unusual circumstances." *State v. Bone-Club*, 128 Wn.2d 254, 259, 906 P.2d 325 (1995). Accordingly, the purported threat posed by the open administration of justice must be sufficiently particularized, and the trial court must determine on a case-by-case basis whether the asserted interest outweighs the public's right to open courts. *Bone-Club*, 128 Wn.2d at 261; *Eikenberry*, 121 Wn.2d at 211; *D.F.F.* I, 144 Wn. App. at 220-21.

¶25 It is with these principles in mind—the importance of the public's constitutional right to the open administration of justice, the presumption of openness that may be overcome only by significant countervailing interests, and our Supreme Court's repeated insistence that such determinations be made on a case-specific basis—that we review the trial court's redaction order here.

---

[3] GR 15(c)(2) lists the following findings as "[s]ufficient privacy or safety concerns that may be weighed against the public interest":

(A) The sealing or redaction is permitted by statute; or

(B) The sealing or redaction furthers an order entered under CR 12(f) or a protective order entered under CR 26(c); or

(C) A conviction has been vacated; or

(D) The sealing or redaction furthers an order entered pursuant to RCW 4.24.611; or

(E) The redaction includes only restricted personal identifiers contained in the court record; or

(F) Another identified compelling circumstance exists that requires the sealing or redaction.

## III

¶26 In the case at hand, Encarnación and Farias contend that the trial court properly applied the requirements set forth in GR 15 and *Ishikawa* in ordering the redaction of the SCOMIS record.[4] Although the trial court engaged in the five-step *Ishikawa* analysis in ruling on the motion to redact, the court abused its discretion by determining that Encarnación's and Farias's purported privacy interest is sufficient to overcome the presumption of openness mandated by article I, section 10. Accordingly, the trial court erred by entering the order.

¶27 We first note that, contrary to Encarnación's and Farias's assertion, we have never held "that protecting such a tenant's housing prospects could be 'compelling enough to override the presumption of openness' in some circumstances." Resp't's Br. at 22 (quoting *Rousey*, 151 Wn. App. at 953). Rather, in *Rousey*, we reversed the trial court's denial of Rousey's motion to redact her full name from a SCOMIS record because the record on appeal did not indicate that the trial court had applied the correct legal standard in considering Rousey's motion to redact. *Rousey*, 151 Wn. App. at 950.

¶28 Nevertheless, our decision in *Rousey* does provide guidance in our review of the trial court's order herein. There, Indigo Real Estate Services, Rousey's landlord, filed an unlawful detainer action against Rousey following a domestic violence incident in which her former partner

---

[4] The Clerk appeals from the trial court's decision ordering redaction of the court record in the unlawful detainer action. However, given the Clerk's limited standing, the Clerk contends only that the trial court's order contravenes GR 15 because either (1) it orders the destruction of a court record without statutory authorization or (2) it is inconsistent with the terms and intent of that rule. Because we resolve this case based upon our review of the trial court's application of the standard for redaction of court records, a product of our "independent obligation to safeguard the open administration of justice," *Duckett*, 141 Wn. App. at 804, we need not further address these contentions. Due to the participation of various amici curiae, all necessary issues have been well and properly briefed.

came to the home, refused to leave, and became abusive and threatening. *Rousey*, 151 Wn. App. at 945. Rousey declined to relinquish her apartment, asserting that Indigo "had improperly pressured her to surrender her tenancy in violation of the victim protection act, RCW 59.18.580(1)." *Rousey*, 151 Wn. App. at 945. The parties thereafter agreed to a voluntary dismissal of the case. *Rousey*, 151 Wn. App. at 945.

¶29 Rousey then filed a motion with the trial court seeking redaction of her full name from the SCOMIS record of the unlawful detainer action, asserting that "her privacy interest in preserving her future rental opportunities outweighed the public interest in having her full name available in the SCOMIS index." *Rousey*, 151 Wn. App. at 945. The trial court denied her motion. *Rousey*, 151 Wn. App. at 945. In its order, the trial court specifically stated that it had not decided whether Rousey's asserted privacy interest was compelling, as required in order to justify redaction, or whether her interest outweighed the public's interest in open records. *Rousey*, 151 Wn. App. at 945-46. Because we could not determine whether the trial court had applied the correct standard in ruling on the motion to redact, we reversed and remanded for application of that standard. *Rousey*, 151 Wn. App. at 953.

¶30 In so doing, we held that the redaction of a SCOMIS record is subject to the requirements set forth in *Ishikawa* and, thus, that the five-step *Ishikawa* analysis must be applied when considering a motion to redact such a record. *Rousey*, 151 Wn. App. at 949-50. We did not hold, however, that Rousey's asserted interest—protecting her future housing rental opportunities—was compelling enough to override the presumption of openness of court records. *Rousey*, 151 Wn. App. at 953 (noting that the trial court on remand "still must exercise discretion to decide whether the interests asserted by Rousey are compelling enough to override the presumption of openness"). Indeed, in providing considerations to facilitate the trial court proceedings on remand, we noted that our Supreme Court

has identified by rule particular records and information to which access is restricted. These include certain health care and financial records filed in family law and guardianship cases. Notably, the court has not established similar general restrictions for unlawful detainer proceedings. Instead, it has emphasized by rule and decision that requests to restrict access to court records and information must be decided on a case-by-case basis, starting with the presumption of openness.

*Rousey*, 151 Wn. App. at 952 (footnote omitted). Thus, we observed that the absence of a Supreme Court rule limiting access to such records should be considered in weighing Rousey's asserted interest against the public's constitutional right to the open administration of justice.

¶31 Similarly, in *Waldon*, we reversed the trial court's decision granting a motion to seal based on the court's failure to incorporate into its analysis the requirements set forth in *Ishikawa*. 148 Wn. App. at 956-57. There, Waldon asserted that "compelling circumstances existed to seal her [vacated criminal conviction record] because she was about to reenter the job market . . . and her theft conviction would severely limit her chances of finding employment." *Waldon*, 148 Wn. App. at 956. However, because we determined that the trial court had not applied the proper standard in ruling on the motion to seal, thus necessitating reversal and remand, we did not determine whether the interest asserted by Waldon was sufficiently compelling to overcome the presumption of openness. *Waldon*, 148 Wn. App. at 967.

¶32 In contrast, we addressed the merits of a motion to seal a vacated criminal court record in *McEnry*, 124 Wn. App. 918. There, McEnry contended that sealing his trial court file was justified because the record "might adversely affect his current or possible future employment." *McEnry*, 124 Wn. App. at 921. However, the trial court found that McEnry had worked for his current employer for 20 years and that there was no reason to expect the employer to check his court records or that his employment would be adversely affected thereby. *McEnry*, 124 Wn. App. at 921-22.

Moreover, McEnry "conceded that potential loss of housing based on his court records was 'not an issue' because he owns his home." *McEnry*, 124 Wn. App. at 926.

¶33 Based upon these facts, we determined that the trial court's finding that McEnry could be harmed by the unsealed file was not supported by substantial evidence. *McEnry*, 124 Wn. App. at 926. Thus, we held that McEnry had "failed to show a 'serious and imminent' threat to an important interest—he merely argued that his criminal records could affect his employment." *McEnry*, 124 Wn. App. at 926 (quoting *Ishikawa*, 97 Wn.2d at 37). However, because the loss of housing was not a potential consequence of McEnry's criminal record, we did not address whether such an interest could be sufficient to overcome the presumption of openness of court records.

¶34 Here, the experienced trial judge applied the correct legal standard, engaging in the five-step *Ishikawa* analysis and complying with the procedural dictates of GR 15. The court determined that Encarnación's and Farias's need to obtain rental housing constituted a "compelling privacy interest," as required by GR 15(c)(2) for redaction of a court record because the applicants were not homeowners and expected "that they [would] need to change residences in the near future." The trial court additionally determined that the SCOMIS record presented a "serious and imminent threat" to their ability to obtain housing, as they had previously been denied housing based upon the existence of that record and had "good reason to expect" that they would similarly be denied housing in the future.

¶35 The trial court also weighed Encarnación's and Farias's asserted interest against the public's constitutional right to the open administration of justice, determining that their interest in obtaining rental housing outweighed the public's right. In so concluding, the trial court relied upon its finding that Encarnación and Farias "were not culpable and did nothing improper to cause their removal from the property" and, thus, the court determined that the SCOMIS

record would not assist landlords in detecting irresponsible tenants. In addition, the court concluded that redaction was proper because it would not "materially impair members of the public from utilizing the records of this action for other public purposes."

¶36 However, "[i]n determining whether court records may be sealed from public disclosure, we start with the presumption of openness." *Rufer*, 154 Wn.2d at 540. Only "under the most unusual circumstances" may the public's constitutional right to the open administration of justice be infringed. *Bone-Club*, 128 Wn.2d at 259. The circumstances here are far from unusual—Encarnación and Farias were defendants in an unlawful detainer action who were not ultimately evicted from their rental housing. Although the trial court determined that redaction was appropriate "in this specific action," the circumstances herein cannot reasonably be distinguished from those of any other defendant in an unlawful detainer action who is not ultimately evicted.

¶37 This is so notwithstanding the fact that the trial court found that Encarnación and Farias "were not culpable and did nothing improper to cause their removal from the property" and that they "raised a meritorious defense" to the action. Substantial evidence does not support these findings. The unlawful detainer action was resolved by stipulation and entry of an agreed order, which nowhere indicates that the action was wrongfully filed. Inculpability is not a necessary conclusion to be drawn from the settlement of a lawsuit. Moreover, the trial court acknowledged that the proceedings concerning the motion to redact were far from adversarial—the court found that neither Hundtofte nor Alexander "presented any written objection to the relief requested" and that "no person appeared on behalf of residential landlords or tenant-screening companies."

¶38 Of greater significance, though, is that the relief afforded by the trial court here, were it deemed appropriate

on appeal, would be available to all similarly situated litigants. Neither the Washington Legislature (by statute) nor our Supreme Court (by rule or decision) has deemed the asserted interest sufficient for such protection. As we noted in *Rousey*, our Supreme Court "has identified by rule particular records and information to which access is restricted. . . . Notably, the court has not established similar general restrictions for unlawful detainer proceedings."[5] 151 Wn. App. at 952. Rather, we recognized, the court "has emphasized by rule and decision that requests to restrict access to court records and information must be decided on a case-by-case basis, starting with the presumption of openness." *Rousey*, 151 Wn. App. at 952. Moreover, because Rousey was a victim of domestic violence, her interests were protected by a statute—a clear legislative declaration of Washington's public policy. There, the landlord had filed the unlawful detainer action in contravention of the victim protection act, RCW 59.18.580(1), which precludes a landlord from terminating a tenancy based on a tenant's status as a victim of domestic violence. *Rousey*, 151 Wn. App. at 945.

¶39 Here, in contrast, no statute currently provides protection for the interest asserted by Encarnación and Farias. Rather, the applicable statute, a provision of the Fair Credit Reporting Act, chapter 19.182 RCW, provides that consumer reporting agencies may not make consumer reports containing information regarding "[s]uits and judgments" that "antedate the report by more than seven years."

---

[5] Both our legislature (by statute) and our Supreme Court (by court rule) have determined that some interests are sufficiently significant to outweigh the presumption of openness of court proceedings and records. *See, e.g.*, RCW 4.24.130(5) (precluding public access to name change petitions by domestic violence victims); RCW 13.50.100 (requiring confidentiality of juvenile records not related to the commission of juvenile offenses); RCW 26.26.610 (allowing for the closure of proceedings, although not for the closure of final orders, in parentage actions); GR 22(g) (restricting access to financial, health, and confidential documents in family law and guardianship cases). This list, although nonexclusive, indicates that our legislature and our Supreme Court have considered categories of circumstances in which the presumption of openness is outweighed by countervailing interests. No such statute or rule applies here.

RCW 19.182.040(1)(b). Thus, it is not unlawful for a consumer reporting agency to report the existence of a lawsuit within seven years of that lawsuit. In granting Encarnación's and Farias's request for redaction of the unlawful detainer record, the trial court found that "[i]t appears that [this provision of the Fair Credit Reporting Act] will prohibit consumer reporting agencies from reporting this action to prospective housing providers on or after November 12, 2016," seven years following the dismissal of the action. Thus, the court determined, the applicants' "need for redaction will substantially diminish after seven years." Accordingly, the trial court ruled that the redaction order "shall remain in effect" until that date.

¶40 The trial court apparently determined that the absence of protection from the reporting of lawsuits within seven years—and, here, in particular, the fact that the statute does not preclude reporting of the unlawful detainer action until 2016—was a problem to be solved. But this approach improperly disregards the fact that the statute, including its seven-year allowance for the reporting of lawsuits, is a legislative declaration of Washington public policy—as is the statute discussed in *Rousey*. Here, however, the legislative policy does not support redaction of the SCOMIS record; indeed, redaction in this circumstance contradicts our legislature's determination that the reporting of lawsuits within seven years is *not* contrary to public policy. Thus, the trial court's redaction order not only conflicts with the constitutional presumption of open courts—it also contravenes the legislative policy determination set forth in the Fair Credit Reporting Act. In overriding the constitutional presumption of openness, the trial court also sought to override a legislative declaration of public policy. The court erred by so doing.

¶41 The relief afforded by the trial court here—redaction of the record of an unlawful detainer action wherein the defendants were not ultimately evicted—if deemed appropriate, would be widely available to all such similarly

situated litigants. Because infringement upon the public's right to open court records is justifiable only in unusual circumstances, such broad-based relief is improper absent a showing that the identified interest is specifically protected by statute, court rule, or other similar example of clear and well-established public policy. Were it not so, the presumption of openness vital to protecting the public's article I, section 10 right to the open administration of justice would be turned on its head. Moreover, here, the trial court's redaction order contravened a clear legislative declaration of public policy allowing for the reporting of lawsuits by credit reporting agencies within seven years.

¶42 The trial court overvalued the interest asserted by Encarnación and Farias in determining that their interest outweighed the public's constitutional right and, in so doing, overrode a public policy determination of our legislature. Thus, the court abused its discretion. Accordingly, the trial court erred by entering the order.

IV

¶43 An additional difficulty with the trial court's redaction order is that it creates a de facto "automatic limitation" that impermissibly precludes the case-by-case analysis required by article I, section 10. This is because, were the trial court's redaction order deemed appropriate on appeal, all similarly situated unlawful detainer action defendants would be entitled to the same extraordinary relief. For this additional reason, the relief afforded by the trial court was improper.

¶44 In *Bone-Club*, our Supreme Court reversed the trial court's decision to temporarily close a pretrial suppression hearing, holding that the trial court's failure to engage in a case-by-case weighing of the competing interests prior to ordering closure had violated the defendant's right to a

public trial.[6] 128 Wn.2d at 256. There, the trial court justified closure of the pretrial hearing on the basis of concerns expressed by the testifying undercover police officer, who "feared public testimony would compromise his undercover activities." *Bone-Club*, 128 Wn.2d at 257. In affirming the trial court's closure order, this court identified the anonymity of the undercover officer as a compelling interest justifying closure of the proceeding. *State v. Boneclub*, 76 Wn. App. 872, 876, 888 P.2d 759 (1995), *rev'd*, 128 Wn.2d 254.[7] Our Supreme Court rejected this analysis, recognizing that such a justification for closure would apply to all hearings involving the testimony of undercover officers: "We immediately question the characterization of this generalized evidence as a compelling interest: only evidence of a particularized threat would likely justify encroachment into a defendant's constitutionally guaranteed fair trial rights." *Bone-Club*, 128 Wn.2d at 261.

¶45 Indeed, our Supreme Court has "repeatedly . . . conclude[d] that automatic limitations on the openness of court proceedings violate article I, section 10 because they are not based on a case-specific inquiry." *D.F.F.* I, 144 Wn. App. at 220. In *Eikenberry*, an association of newspapers challenged a statute that, without exception, prohibited the courts from disclosing to the public or press the identities of child victims of sexual assault. 121 Wn.2d at 207-09. The Supreme Court recognized that the asserted interests—protecting child victims from further trauma and harm and ensuring their constitutionally guaranteed privacy—were compelling. *Eikenberry*, 121 Wn.2d at 211. Nevertheless, the high court unanimously held that the challenged stat-

---

[6] There, the court determined that the defendant's article I, section 22 right—not the public's article I, section 10 right—had been violated by closure of the suppression hearing. *Bone-Club*, 128 Wn.2d at 257-58. However, the same closure standard applies for both section 10 and section 22 rights. *Bone-Club*, 128 Wn.2d at 259.

[7] The Supreme Court decision and the Court of Appeals decision in this case differently spell the defendant's name, both in the case captions and throughout each opinion. Although the Supreme Court opinion spells the defendant's name "Bone-Club," the Court of Appeals opinion spells his name "Boneclub."

ute violated the public's article I, section 10 right to open courts. *Eikenberry*, 121 Wn.2d at 214. The court determined that, although the asserted interests "on an individualized basis may be sufficient to warrant court closure," the statute precluded the trial court from engaging in such constitutionally mandated individualized determinations. *Eikenberry*, 121 Wn.2d at 211. Thus, the statute was determined to be unconstitutional. *Eikenberry*, 121 Wn.2d at 211.

¶46 Following our Supreme Court's lead, we thereafter held unconstitutional a superior court rule requiring mental illness commitment proceedings to be closed to the public. *D.F.F.* I, 144 Wn. App. at 218. We determined that the rule constituted an "automatic limitation[ ]" on the openness of court proceedings that precluded the trial court from engaging in the case-specific inquiry mandated by article I, section 10. *D.F.F.* I, 144 Wn. App. at 220. Thus, we concluded that the court rule "categorically preclude[d] the type of analysis that might bring such a court closure in line with the constitutional requirements articulated by the Supreme Court." *D.F.F.* I, 144 Wn. App. at 225. The Supreme Court later affirmed this decision. *D.F.F.* II, 172 Wn.2d at 47.

¶47 Here, the trial court's order grants extraordinary relief based upon ordinary circumstances. Were the relief afforded by the trial court deemed appropriate, it would be similarly available to all similarly situated litigants—defendants in unlawful detainer actions who were not ultimately evicted. This effectively precludes the case-by-case analysis required by article I, section 10, creating a de facto "automatic limitation" that discounts the significance of the public's right to the open administration of justice. Such would be contrary to the presumption of openness of court records required by our state's constitution.

## V

¶48 The trial court abused its discretion in determining that Encarnación's and Farias's purported interest out-

weighed the presumption of openness mandated by article I, section 10. Were redaction appropriate in these circumstances, this same relief would be properly granted whenever a defendant in an unlawful detainer action is not evicted and thereafter seeks to redact the court record of that action. Absent constitutional, statutory, or court rule protection for unlawful detainer defendants, such extraordinary relief is inappropriate where that relief would thereafter be warranted for all similarly situated litigants. Here, the trial court's redaction order is particularly problematic in that it, in the course of overriding the constitutional presumption of openness, also contravened a legislative declaration of public policy set forth in the Fair Credit Reporting Act. Moreover, providing such an exceptional remedy here would create a de facto "automatic limitation" on the openness of court records in any case in which an unlawful detainer defendant sought redaction. Because this is contrary to the presumption of openness of judicial records and proceedings, we reverse the trial court's order granting Encarnación's and Farias's request for redaction.

¶49 Reversed.

SPEARMAN, A.C.J., and COX, J., concur.

Reconsideration denied August 22, 2012.

Review granted at 176 Wn.2d 1019 (2013).