# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                           |     |                        |
| ------------------------- | --- | ---------------------- |
| STATE OF WASHINGTON,      | )   | No. 69865-6-I          |
|                           | )   |                        |
| Respondent,               | )   | DIVISION ONE           |
|                           | )   |                        |
| v.                        | )   |                        |
|                           | )   |                        |
| CHRISTOPHER EUGENE PAYTON, | )  | UNPUBLISHED            |
|                           | )   |                        |
| Appellant.                | )   | FILED: April 22, 2013  |
|                           | )   |                        |

Cox, J. — Christopher Payton appeals the judgment and sentence, following his convictions of first and second degree assault. He claims that the trial court committed reversible error when it gave a "first aggressor" jury instruction. Payton also requests that we strike the forfeiture of property provision from his judgment and sentence, and that we reverse the trial court's order dismissing, without prejudice, the charge of attempted murder and remand for correction. In his Statement of Additional Grounds for Review, Payton makes additional claims.

We hold that the trial court did not abuse its discretion in determining that there was sufficient evidence to support an aggressor instruction in this case. We decline to address the assignment of error regarding the forfeiture of property provision because it is entirely speculative and not properly before this court.

The parties agree that the trial court's Order for Dismissal as to Count I Only Without Prejudice contained an error. Thus, we vacate that order and remand for correction of the error.

Payton's Statement of Additional Grounds for Review has no merit.

We affirm Payton's first and second degree assault convictions.

In 2010, Christopher Payton and G.M. were in a romantic relationship and lived together with G.M.'s adult son, K.Y. The three lived in G.M.'s house in Tacoma, but K.Y. slept in the attached garage.

Early one morning in October 2010, K.Y. testified that he heard his mother screaming while he was in the garage. He grabbed his stun gun and went toward the screaming. When K.Y. entered the bedroom, he testified that he saw his mother on a lower bunk bed and Payton standing over her with a hatchet raised at shoulder level. He testified that he discharged the stun gun into Payton's torso. Then, K.Y. felt Payton swinging a hatchet at his neck, back, and head.

G.M. testified that before K.Y. entered the bedroom she and Payton were arguing, and eventually Payton punched her.

Payton testified that he was verbally aggressive toward G.M., but he claimed that he did not push or punch her, or threaten her with a hatchet. He testified that G.M. screamed when he reached toward the bed and tried to pull off a blanket to see if G.M. had anything in her hand. Then, he felt a pinching in his side. As he fell to the ground, he testified that he grabbed a hatchet and started defending himself. He claims that he did not know who was attacking him. He testified that he swung the hatchet until the person fell down.

By amended information, the State charged Payton with three criminal acts (in three separate counts): attempted first degree murder of K.Y. (count I),

2

first degree assault of K.Y. (count II), and second degree assault of G.M. (count III). The State also alleged that Payton used a deadly weapon for all three counts for purposes of deadly weapon enhancements. It also alleged that the crimes were domestic violence incidents.

A jury acquitted Payton of attempted first degree murder and failed to reach a verdict on the lesser included offense of attempted second degree murder. But it found Payton guilty of counts II and III and the corresponding enhancements.

For counts II and III, the court sentenced Payton to 183 months of confinement. Upon the State's motion, the court ordered that count I be dismissed without prejudice.

Payton appeals.

## AGGRESSOR INSTRUCTION

Payton argues that the trial court committed reversible error when it gave the State's proposed first aggressor jury instruction over defense counsel's objection. We disagree.

At Payton's jury trial, the court gave the following aggressor instruction, which was based on WPIC 16.04:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use, offer or attempt to use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.[1]

---

[1] Clerk's Papers at 137; Report of Proceedings (Aug. 30, 2011) at 606-09.

A trial court's decision regarding a jury instruction is reviewed for abuse of discretion if it is based on a factual dispute.[2] A trial court's decision based on a ruling of law is reviewed de novo.[3] To determine whether there is sufficient evidence to support giving an instruction, a court views the evidence in the light most favorable to the party requesting the instruction.[4]

Payton argues that the aggressor instruction was improper in this case because the evidence did not support the State's theory that he was the first aggressor toward K.Y. Since this is a factual dispute, we review the facts to determine whether the trial court abused its discretion in allowing the instruction.

A jury instruction is appropriate if there is sufficient evidence to support the theory on which the instruction is based.[5] Generally, "the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation."[6]

Although not favored, an aggressor instruction is proper if there is credible evidence, even if disputed, "from which a jury can reasonably determine that the

---

[2] State v. Walker, 136 Wn.2d 767, 771-72, 966 P.2d 883 (1998).

[3] Id. at 772.

[4] State v. Fernandez-Medina, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2000).

[5] State v. Davis, 119 Wn.2d 657, 665, 835 P.2d 1039 (1992).

[6] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

defendant provoked the need to act in self-defense."[7] The provoking act must be intentional and related to the assault for which self-defense is claimed, but it cannot be the actual assault.[8]

A defendant's intentional acts directed at a third party can justify an aggressor instruction if the acts were reasonably "likely to provoke a belligerent response from the actual victim."[9]

Here, the evidence showed that Payton's actions directed at G.M. were reasonably likely to provoke a belligerent response from K.Y.

The State presented evidence that K.Y., who lived in the house with Payton and G.M., heard G.M. screaming. He grabbed his stun gun and went to the bedroom where he heard the screaming.

When he entered the bedroom, K.Y. testified that he saw his "mother pretty much pinned on that mattress, the lower mattress, and [Payton] standing . . . with the hatchet in his right hand, and [his mother] screaming and reaching for her phone and purse."[10]

Viewing the evidence in the light most favorable to the State, Payton's actions against G.M. were reasonably likely to provoke a belligerent response

---

[7] Id.

[8] State v. Kidd, 57 Wn. App. 95, 100, 786 P.2d 847 (1990).

[9] Id. at 98, 100 (citing State v. Wasson, 54 Wn. App. 156, 159-61, 772 P.2d 1039 (1989)); see also Davis, 119 Wn.2d at 666 (explaining that there was evidence that Davis pushed a woman and this was an intentional act that was "likely to provoke a belligerent response" from the woman's friend who intervened).

[10] Report of Proceedings (Aug. 24, 2011) at 128.

from K.Y. who wanted to protect his mother. Payton knew that K.Y. lived in the house and could be there to hear G.M. screaming. It is reasonably likely that a son who heard his mother screaming and saw a hatchet drawn on her would come to her aid.

The State also argues that the aggressor instruction was "proper because there was evidence that [Payton] drew a weapon first."[11] But we need not address this argument because we hold that the aggressor instruction was warranted on the basis we explained.

Payton argues that "the act alleged to be the 'first aggression' must be directed at the same person against whom the self-defense claim is made."[12] Payton cites State v. Kidd to support his argument.[13] But as discussed above, this court in Kidd explained that a defendant's intentional acts toward a third party can be a provoking act if it was reasonably "likely to provoke a belligerent response from the actual victim."[14] Thus, it does not matter that Payton's actions were initially directed only at G.M., or that K.Y. was not in the room when Payton first started assaulting G.M. The aggressor instruction was warranted because

---

[11] Response Brief at 13 (citing State v. Wingate, 155 Wn.2d 817, 822, 122 P.3d 908 (2005)); see also Riley, 137 Wn.2d at 910 ("If there is credible evidence that the defendant made the first move by drawing a weapon, the evidence supports the giving of an aggressor instruction.").

[12] Appellant's Opening Brief at 20.

[13] Id. (citing Kidd, 57 Wn. App. at 100).

[14] Kidd, 57 Wn. App. at 100.

there was other evidence that Payton's actions were reasonably likely to cause a belligerent response in K.Y.

Payton also contends that there was absolutely no evidence here that his assault was "intended to provoke a belligerent response from [K.Y.] so that [he] could then assault [K.Y.] with impunity under a claim of self defense."[15] But the issue is not whether Payton *intended* to provoke a belligerent response from K.Y. The issue is whether Payton's intentional acts were "reasonably *likely* to provoke a belligerent response."[16]

Finally, Payton cites State v. Wasson[17] and State v. Brower[18] to support his argument that the aggression instruction was improper. In both of these cases, the courts determined that an aggressor instruction was not warranted.[19] But these cases are distinguishable.

In the first case, Wasson and his cousin, Billy Bartlett, were fighting outside Bartlett's apartment.[20] A visitor to the neighborhood, Thomas Reed,

---

[15] Appellant's Opening Brief at 20-21.

[16] See Davis, 119 Wn.2d at 666 (concluding that Davis pushing a man's friend was "reasonably likely to provoke a belligerent response" from that man); see also Kidd, 57 Wn. App. at 100 ("[The provoking act cannot] be an act directed toward one other than the actual victim, unless the act was likely to provoke a belligerent response from the actual victim.").

[17] 54 Wn. App. 156, 772 P.2d 1039 (1989).

[18] 43 Wn. App. 893, 721 P.2d 12 (1986).

[19] Wasson, 54 Wn. App. at 161; Brower, 43 Wn. App. at 902.

[20] Wasson, 54 Wn. App. at 157.

came out to tell the men to quiet down.[21] Bartlett and Reed began fighting, and, after hitting Bartlett several times, Reed approached Wasson.[22] Wasson then shot Reed.[23] Division Three of this court concluded that Wasson was not an aggressor because the fight between Wasson and Bartlett was not related to Reed's assault of Bartlett.[24]

But Division Three also noted that a defendant's intentional act directed to a third party could justify an aggressor instruction if the act was "reasonably likely to provoke a belligerent response" from the victim.[25] This describes the situation here, and it warranted an aggressor instruction.

In Brower, Division Three concluded that an aggressor instruction was not warranted because there was *no* evidence that Brower engaged in any provoking act toward Martin.[26] But, here, there was evidence that Payton engaged in a provoking act. Thus, this case is distinguishable from Brower.

In sum, the trial court did not abuse its discretion in determining that there was sufficient evidence to support an aggressor instruction in this case.

---

[21] Id.

[22] Id.

[23] Id.

[24] Id. at 159.

[25] Id. at 159-61 (citing State v. Thomas, 63 Wn.2d 59, 385 P.2d 532 (1963)).

[26] 43 Wn. App. at 902.

8

## FORFEITURE OF PROPERTY

Payton argues that the trial court erred when it required him to "[f]orfeit any items in property" in his judgment and sentence.[27] He did not object to this condition below, but he contends that an illegal sentence may be reviewed for the first time on appeal.[28] He requests that we order the trial court to strike this provision from his judgment and sentence.[29] We decline to address this assignment of error.

"'[A] court may refuse to return seized property no longer needed for evidence only if (1) the defendant is not the rightful owner; (2) the property is contraband; or (3) the property is subject to forfeiture pursuant to statute.'"[30]

"In Washington, CrR 2.3(e) governs motions for the return of illegally seized property and also motions for the return of lawfully seized property no longer needed for evidence."[31]

Here, Payton's judgment and sentence for counts II and III contained the following provision:

---

[27] Appellant's Opening Brief at 24.

[28] Id. at 25 (citing State v. Bahl, 164 Wn.2d 739, 745, 193 P.3d 678 (2008)).

[29] Id. at 24.

[30] City of Walla Walla v. $401,333.44, 164 Wn. App. 236, 244, 262 P.3d 1239 (2011) (alteration in original) (internal quotation marks omitted) (quoting City of Walla Walla v. $401,333.44, 150 Wn. App. 360, 367, 208 P.3d 574 (2009)).

[31] State v. Alaway, 64 Wn. App. 796, 798, 828 P.2d 591 (1992).

> 4.4 **OTHER.** Property may have been taken into custody in conjunction with this case. Property may be returned to the rightful owner. Any claim for return of such property must be made within 90 days. After 90 days, if you do not make a claim, property may be disposed of according to law.[32]

The judgment and sentence also listed other conditions, which included, "[f]orfeit any items in property."[33]

Payton does not provide a description of any property that was actually seized or forfeited. He also does not demonstrate that he has made a motion to the trial court regarding the return of any property. Thus, any issue arising from this condition is entirely speculative and not properly before this court on appeal. We decline to address this assignment of error.

## DISMISSAL OF COUNT I

Payton argues that we should reverse the trial court's order dismissing count I and remand with instructions to correct the order. We agree.

The State concedes that the order contained an error. The parties agree that the order should have reflected that **count I** (attempted first degree murder) was dismissed **with** prejudice because the jury acquitted Payton of this charge. They also agree that **count I-A** (attempted second degree murder) should have been dismissed **without** prejudice because the jury was unable to agree as to this charge. The State asserts that it will seek a clarified order in the trial court. Based on this representation that the error will be corrected based on the

---

[32] Clerk's Paper at 181.

[33] Id.

10

agreement of the parties, we vacate the Order for Dismissal as to Count I Only Without Prejudice and remand for the order to be corrected.

## STATEMENT OF ADDITIONAL GROUNDS

Payton raises a number of issues in his statement of additional grounds. None are persuasive.

First, Payton requests that we exercise our discretion and request additional briefing from his appointed counsel pursuant to RAP 10.10(f). After reviewing Payton's additional grounds for review, we see no need to do so.

Second, Payton argues that the State failed to present sufficient evidence to prove the elements of first degree assault of K.Y. and second degree assault of G.M.

Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, any rational trier of fact could have found that each element of the crime was proved beyond a reasonable doubt.[34] We draw all reasonable inferences from the evidence in the State's favor and interpret the evidence most strongly against the defendant.[35] We assume "the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[36]

Under RCW 9A.36.011(1)(a), "A person is guilty of assault in the first degree if he or she, with intent to inflict great bodily harm: (a) Assaults another

---

[34] State v. Drum, 168 Wn.2d 23, 34-35, 225 P.3d 237 (2010).

[35] State v. Joy, 121 Wn.2d 333, 339, 851 P.2d 654 (1993).

[36] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

with a firearm or any deadly weapon or by any force or means likely to produce great bodily harm or death . . . ."

Payton contends that the State failed to present any evidence that shows that he acted with intent to inflict great bodily harm. We disagree.

G.M. testified that K.Y. fell down with the first hit of the hatchet, but Payton continued to swing the hatchet and repeatedly hit K.Y. "like a machine." Dr. Michelle Strong testified that K.Y. suffered at least seven blows based on the lacerations she observed. A rational trier of fact could have found from this evidence that Payton acted with intent to inflict great bodily harm. Thus, this argument is not persuasive.

For the second degree assault conviction, Payton argues that the State failed to present evidence that Payton inflicted "substantial bodily harm" to G.M. as defined under RCW 9A.36.021(1)(a). But the State charged and instructed the jury as to second degree assault under RCW 9A.36.021(1)(c). Under RCW 9A.36.021(1)(c), "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree: . . . (c) Assaults another with a deadly weapon." Thus, the infliction of substantial bodily harm was *not* an element of the crime charged, and this argument fails.

Third, Payton argues that his counsel was ineffective because his counsel failed to make a motion to arrest the jury's guilty verdict for first and second degree assault based on insufficient evidence. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his counsel's performance fell below an objective standard of reasonableness and that the

deficient performance prejudiced his trial.[37] Here, Payton fails to show how he was prejudiced by the absence of this motion, as his sufficiency of the evidence argument is not persuasive. Failure on the prejudice prong defeats a claim of ineffective assistance of counsel.[38]

Fourth, Payton contends that the trial court erred when it closed the court without first applying the closure test articulated in State v. Boneclub.[39] Payton cites two pages in the report of proceedings.[40] But these two pages do not show that the court was closed to the public. Thus, this argument is not persuasive.

Finally, Payton argues that there was no evidence to support the aggressor instruction. We need not address this argument again as it is adequately addressed in his appellate counsel's brief.[41]

---

[37] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

[38] Strickland, 466 U.S. at 697; State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

[39] Appellant's Statement of Additional Grounds for Review at 8 (citing State v. Boneclub, 76 Wn. App. 872, 888 P.2d 759, reversed by, 128 Wn.2d 254, 906 P.2d 325 (1995)).

[40] Id. (citing Report of Proceedings (Aug. 30, 2011) at 631-32).

[41] See, e.g., State v. Gomez, 152 Wn. App. 751, 754, 217 P.3d 391 (2009) (refusing to review a defendant's statement of additional grounds because he raised no new issues).

We vacate the trial court's order dismissing count I without prejudice and remand for the order to be corrected. We affirm the judgment and sentence as to counts II and III.

Cox, J.

WE CONCUR: